**2020 UT App 154**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ORLSON GENE CHARLES,
Appellant.

Opinion
No. 20190963-CA
Filed November 13, 2020

Seventh District Court, Monticello Department
The Honorable Don Torgerson
No. 191700081

K. Andrew Fitzgerald, Attorney for Appellant

Kendall G. Laws, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES KATE APPLEBY and JILL M. POHLMAN concurred.

HARRIS, Judge:

¶1 Orlson Gene Charles faced two misdemeanor charges—
lewdness involving a child and general lewdness—stemming
from his actions involving a mother and her daughter. After a
bench trial, the district court found that Charles, in the presence
of a child under age fourteen, had committed an "other act of
lewdness" under the relevant statute, and entered a judgment of
conviction against Charles for lewdness involving a child, but
determined that any conviction for general lewdness was
merged into the conviction for lewdness involving a child.
Charles appeals his conviction. We reject Charles's two main
arguments—that his actions did not constitute an "other act of
lewdness" and that his conviction was unconstitutional—but we
nevertheless reverse Charles's conviction for lewdness involving

a child, because the State presented insufficient evidence of the daughter's age. We remand the case to the district court for judgment of acquittal on that count, and for further proceedings regarding the general lewdness count.

## BACKGROUND

¶2    One afternoon, a woman (Mother) was driving with her daughter (Daughter) and Daughter's friend (Friend), whom Mother described, several times, as "two little kids" and "little girls." Daughter was riding in the front passenger seat, and Friend was in the back seat. As Mother pulled into Friend's driveway to drop Friend off, she saw Charles—a man she did not know—walking in the street. As the girls got out of the car and began to walk toward the house, Mother noticed that Charles had stopped and was standing behind Mother's vehicle, attempting to make eye contact with her through the window. Charles then began making two gestures toward Mother. With one hand, he placed two of his "fingers to his mouth in a V [shape] and [stuck] his tongue through it," which Mother interpreted as a simulation of oral sex and an "[o]ral sex invite." At the same time, Charles had his other hand "over his crotch," but she could not tell "if he was rubbing himself."

¶3    Mother testified that she was "instantly alarmed." She remained in the car, looked back at Charles, and found him "still there doing that." Over the course of the next few minutes, "every time" Mother looked in her rearview mirror she saw Charles "still standing back there doing that." By Mother's estimate, Charles continued to "star[e] at" her and make the same gestures for about five to seven minutes. Mother testified that she felt "scared" and was wondering why Charles was lingering there, making the gestures. She became concerned that Charles was potentially "out to hurt somebody" or "mess with little girls." Eventually, Daughter returned to the car, and asked

Mother why "the man standing back there" was making the gestures and what the gestures meant. Based on this exchange and their subsequent conversation, Mother concluded that Daughter saw Charles and that he saw her, and observed that the events made Daughter "very nervous."

¶4 Mother contacted police after leaving the scene, and an officer soon located Charles. After investigating, the State charged Charles with lewdness involving a child, a class A misdemeanor (count 1), and lewdness, a class B misdemeanor (count 2). The basis for count 2 was the gestures made toward Mother, and the basis for count 1 was Charles "knowing that a child was present" when he made the gestures.

¶5 The case proceeded to trial, and at Charles's request the matter was tried to the bench. Only two witnesses testified at trial: Mother and the responding officer. Neither witness was asked about Daughter's age, and neither witness offered any evidence of Daughter's exact age, although, as noted, Mother stated on several occasions that Daughter and Friend were "little kids" and "little girls."

¶6 During closing argument, Charles made no assertion that his actions had been a form of speech, or that conviction was barred on constitutional grounds; instead Charles argued that, although his conduct was "an act of impropriety," it did not "rise[] to the level of . . . criminal lewdness" under the governing statute. The district court found Charles's arguments unavailing, and determined "beyond a reasonable doubt" that Charles committed an "other act of lewdness," and that he committed that act "in the presence of a child under the age of 14 years old." The court stated that "there's simply no interpretation of his conduct that is anything other than . . . misconduct of a sexual nature which makes it an other act of lewdness under the statute." Under the facts, then, the court found that Charles had committed both class B misdemeanor lewdness (under count 2)

and class A misdemeanor lewdness involving a child (under count 1), but concluded that the two convictions merged, reasoning that, since Charles's behavior "was one act in the presence of a child and also in the presence of an adult," it did not "warrant[] a separate charge." The court therefore declined to enter a judgment of conviction on count 2, and entered a judgment of conviction only on count 1.

ISSUES AND STANDARDS OF REVIEW

¶7 Charles now appeals his conviction for lewdness involving a child, raising two main issues. First, he mounts a constitutional challenge, arguing that the district court violated his right to free speech by entering a conviction that criminalized "gestures that are protected by the First Amendment." But Charles raises this issue for the first time on appeal and, as we explain below, the issue is therefore unpreserved. Charles makes mention of the plain error exception to our preservation rules, but he fails to adequately brief the applicability of that exception.

¶8 Second, Charles asserts that the State failed to present evidence sufficient to satisfy two of the required elements of lewdness involving a child: that his conduct qualified as "any other act of lewdness" under the relevant statutes, and that his actions occurred "in the presence of a child who is under 14 years of age." The first issue—whether Charles's actions, the facts of which are essentially undisputed, meet the statutory definition of "other act[s] of lewdness"—presents a question of statutory interpretation. On such questions, "our review is for correctness." *See Biesele v. Mattena*, 2019 UT 30, ¶ 31, 449 P.3d 1. The second issue—whether the State's evidence of Daughter's age was sufficient—presents a question of evidentiary sufficiency. "When reviewing a bench trial for sufficiency of the evidence, we must sustain the district court's judgment unless it is against the clear weight of the evidence, or if we otherwise

reach a definite and firm conviction that a mistake has been made." *State v. Holland*, 2018 UT App 203, ¶ 9, 437 P.3d 501 (quotation simplified); *see also State v. Miller*, 2017 UT App 171, ¶ 7, 405 P.3d 860 ("We may reverse only when it is apparent that there is not sufficient competent evidence as to each element of the crime charged." (quotation simplified)).

¶9      Finally, because we reverse Charles's conviction for lewdness involving a child on the basis that the State failed to present sufficient evidence of Daughter's age, but reject Charles's remaining arguments, we briefly mention the district court's decision that any conviction on count 2 (for lewdness) was merged into Charles's conviction on count 1 (for lewdness involving a child).

ANALYSIS

I

¶10     Charles's first challenge is constitutional: he asserts that his gestures were protected by the First Amendment to the United States Constitution, and that therefore his conviction in this case cannot stand. Charles acknowledges that he did not present this argument to the district court, and that the issue is therefore unpreserved. "A failure to preserve an issue in the [district] court generally precludes a party from arguing that issue in an appellate court, absent a valid exception," of which there are three: "plain error, ineffective assistance of counsel, and exceptional circumstances." *State v. Johnson*, 2017 UT 76, ¶¶ 18–19, 416 P.3d 443. Thus, we may only reach the unpreserved constitutional issue if Charles "establish[es] the applicability of one of these exceptions." *See id.* ¶ 19.

¶11     In the "statement of issues" section of his opening brief, Charles briefly references the plain error exception to our

preservation rules. But in the remainder of his opening brief, Charles fails to make any argument regarding the plain error exception, and makes no attempt to persuade us that this exception should apply on the facts of this case.[1]

¶12   "To prevail on a plain error claim, an appellant must show that (i) an error exists; (ii) the error should have been obvious to the [district] court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *State v. Almaguer*, 2020 UT App 117, ¶ 11, 472 P.3d 326 (quotation simplified). "For an error to be obvious to the [district] court, the party . . . must show that the law governing the error was clear, or plainly settled, at the time the alleged error was made." *Johnson*, 2017 UT 76, ¶ 21 (quotation simplified). In his opening brief, Charles makes no effort to discuss these standards, and therefore fails to carry his burden of demonstrating that the district court committed obvious error in failing to step in, without being asked to do so, and halt the State's prosecution of him on constitutional grounds. On this basis, we reject Charles's claim that his conviction was unconstitutional.

---

1. After the State pointed out Charles's failure to brief the plain error issue in his opening brief, Charles made some effort to address the issue in his reply brief. However, "[w]hen a party fails to raise and argue an issue on appeal, or raises it for the first time in a reply brief, that issue is waived and will typically not be addressed by the appellate court." *State v. Johnson*, 2017 UT 76, ¶ 16, 416 P.3d 443; *see also Kendall v. Olsen*, 2017 UT 38, ¶ 13, 424 P.3d 12 (stating that it was "too late" for an appellant to address an issue "in his reply brief," because it "deprives the appellee of the chance to respond").

II

¶13 Next, Charles asserts that the State's evidence failed to satisfy two of the statutory elements of the crime of which he was convicted. The relevant statute provides as follows:

> A person is guilty of lewdness involving a child if the person . . . intentionally or knowingly:
>
> (a) does any of the following in the presence of a child who is under 14 years of age:
>
> (i) performs an act of sexual intercourse or sodomy;
>
> (ii) exposes his or her genitals, the female breast below the top of the areola, the buttocks, the anus, or the pubic area:
>
>> (A) in a public place; or
>>
>> (B) in a private place under circumstances the person should know will likely cause affront or alarm or with the intent to arouse or gratify the sexual desire of the actor or the child;
>
> (iii) masturbates; or
>
> (iv) performs any other act of lewdness . . . .

Utah Code Ann. § 76-9-702.5(2) (LexisNexis Supp. 2019).[2] Because there is no evidence that Charles performed an actual

_____

2. In charging documents, the State referenced the 2018 version of section 76-9-702.5. However, the statute was amended during the 2019 legislative session, and took effect on May 14, 2019, one day before the events at issue in this case. *See* Lewdness Statute

(continued…)

sexual act, exposed himself, or masturbated, the State relied on subsection (2)(a)(iv) and asserted that Charles's actions constituted an "other act of lewdness." The district court agreed, and also found that Charles had committed that act in the presence of a child under the age of fourteen.

¶14    Charles's first statutory argument is that his actions did not constitute an "other act of lewdness." His second statutory argument is that the State failed to present sufficient evidence of Daughter's age, and therefore failed to satisfy one of the statutory elements of lewdness involving a child. We address each of Charles's elements-based arguments, in turn.[3]

---

(…continued)

Modification Act, ch. 394, § 1, 2019 Utah Laws 2724, 2724. Because we apply the law as it exists at the time of the criminal offense, *see State v. Clark*, 2011 UT 23, ¶ 11, 251 P.3d 829 ("[C]ourts must apply the law in effect at the time of the occurrence regulated by that law." (quotation simplified)), we cite to the 2019 version of the statute. In any event, the 2019 amendments are not relevant here, and neither party suggests that application of the 2019 version—as opposed to the 2018 version—of the statute would change the outcome of this appeal.

3. The phrase "other act of lewdness" appears identically in both the "lewdness" statute, Utah Code Ann. § 76-9-702(1)(d) (LexisNexis Supp. 2019), and the "lewdness involving a child" statute, *id*. § 76-9-702.5(2)(a)(iv) (LexisNexis Supp. 2019). Thus, on the facts of this case, if Charles's first elements-based argument is correct, he can be guilty of neither count 1 (lewdness involving a child) nor count 2 (lewdness). His second elements-based argument, however, goes only to count 1.

A

¶15    Our supreme court has discussed, at some length, the meaning of the "other act of lewdness" language found in Utah's lewdness statutes. In *State v. Bagnes*, 2014 UT 4, 322 P.3d 719, the court began its analysis by noting that "[t]he term 'lewdness' is not defined by statute," and concluded that the term should be given its ordinary meaning. *Id.* ¶¶ 13–14. After reviewing several dictionary definitions of "lewdness," the court determined that the statutory language was meant to convey the notion of "lascivious lewdness," a term the court described as "lewdness involving misconduct of a sexual nature." *Id.* ¶¶ 15–16. In particular, the court invoked the interpretive canon *ejusdem generis*, which provides that "general catchall terms appearing at the beginning or end of an exemplary statutory list are understood to be informed by the content of the terms of the list." *Id.* ¶ 18. The court concluded that an "other act of lewdness" must be of "the same kind, class, character, or nature as those" acts that were "specifically enumerated" in the statute, such as a sex act, exposure, or masturbation. *Id.* ¶ 19 (quotation simplified). The court summed up its analysis as follows:

> In other words, "other act[s] of lewdness" encompasses conduct similar to, but not falling precisely within, the enumerated acts. The similarity, moreover, must be in terms of lasciviousness or indulgence of lust. So the catchall term applies to conduct that does not precisely amount to one of the enumerated lewd acts but that dramatizes, gesticulates, imitates, or simulates such acts. Thus, simulated masturbation qualifies as an "other act of lewdness." And a parallel principle would extend to the other lewd acts enumerated by statute: A simulated sex act could amount to an "other act of lewdness," as could an act of virtual exposure of private parts . . . .

*Id.* ¶ 23 (quotation simplified); *see also In re A.T.*, 2001 UT 82, ¶¶ 11–13, 34 P.3d 228 (holding that "the simulation of masturbation in a public place with the intent to offend" would constitute an "other act of lewdness" under the statute).

¶16   In reaching its conclusion that Charles performed an "other act of lewdness," the court cited and analyzed *Bagnes* and, with that case in mind, found that Charles's actions constituted "misconduct of a sexual nature." The court characterized Charles's actions as "simulating oral sex" and an "invitation to oral sex." The court then stated that "there's simply no interpretation of [Charles's] conduct that is anything other than . . . misconduct of a sexual nature," and concluded that the actions constituted an "other act of lewdness under the statute."

¶17   Charles assails this conclusion, claiming that the district court erred by characterizing his actions as sexual misconduct. Charles asserts that his gestures did not "rise[] to the level of . . . criminal lewdness" of a sexual nature, and instead compares them to "use of the middle finger." We certainly acknowledge Charles's point that, even though raising one's middle finger toward another is a gesture that historically carried a sexual connotation, it is not always used or intended that way, and in modern times it is often used merely as a general insult or even an attempt at humor. *See The Finger*, Wikipedia, https://en.wikipedia.org/wiki/The_finger [https://perma.cc/TU6H-PC89]; *see also Brockway v. Shepherd*, 942 F. Supp. 1012, 1016 (M.D. Pa. 1996) (determining, in that case, that the act of raising one's middle finger toward another was "not sexual in nature" and instead was "intended to express disrespect for and to offend" the person at whom it was directed). If all Charles had done here was raise his middle finger toward Mother and Daughter, we would certainly be presented with a different case. But Charles's actions were significantly more sexually suggestive than merely raising one's middle finger. Here, Charles simulated oral sex with his fingers and tongue while

staring at Mother, a person he did not know, and did so for five to seven minutes continuously, while placing his other hand on his crotch. These actions—unlike raising one's middle finger—are unambiguously sexual in nature, and would be alarming and offensive to any reasonable person under the circumstances. *See In re A.T.*, 2001 UT 82, ¶¶ 10–13 (stating that a simulated sex act can qualify as an "other act of lewdness" when performed "with the intent to offend" and alarm the victim, assessed from the perspective of "an objective viewer").

¶18 Given our supreme court's instruction that a "simulated sex act" can "amount to an 'other act of lewdness'" under the lewdness statute, *see Bagnes*, 2014 UT 4, ¶ 23, and given the particulars of Charles's actions, we conclude that the district court's analysis of *Bagnes* and the relevant statute was sound, and that it did not err in its interpretation of the statute or in its application of the statute to Charles's conduct. Charles committed an "other act of lewdness" that was "similar to, but not falling precisely within," the specific acts enumerated in the lewdness statutes. *See id.* Accordingly, the State presented sufficient evidence at trial to satisfy that element of the statute.

B

¶19 Charles next asserts that the State failed to present sufficient evidence of Daughter's age, and therefore failed to establish an essential element of the crime of "lewdness involving a child." *See* Utah Code Ann. § 76-9-702.5. That crime requires that the lewdness occur "in the presence of a child who is under 14 years of age." *See id.* § 76-9-702.5(2)(a).

¶20 The State responds by pointing out that Charles did not raise this issue before the district court, and made no objection at trial that the State had failed to satisfy the age element. In the State's view, Charles's challenge to the district court's finding on this point is unpreserved. The State's preservation argument

would be well-taken if this were an appeal from a jury trial; our supreme court has long held that a defendant who wishes to challenge the sufficiency of the evidence following a jury trial must raise the issue to the district court first. *See State v. Holgate*, 2000 UT 74, ¶ 14, 10 P.3d 346. However, because Charles's guilt was adjudicated via a bench trial, the State's argument is without merit. "Unlike challenges to a jury verdict, a defendant need not file a separate motion or make a separate objection to challenge the sufficiency of the evidence supporting the court's factual findings in a bench trial." *State v. Holland*, 2018 UT App 203, ¶ 9, 437 P.3d 501; *see also State v. Larsen*, 2000 UT App 106, ¶ 9 n.4, 999 P.2d 1252 (citing Utah R. Civ. P. 52(a)(3), Utah R. Crim. P. 81(e)). Therefore, Charles was not required to take any action to preserve a challenge to the sufficiency of the evidence with regard to the statutory elements of the crime, and we accordingly proceed to review his challenge to the sufficiency of the State's evidence on the age element.[4]

---

4. We note that this principle applies only to sufficiency challenges that go to an element of the crime, which the State bears the burden of proving beyond any reasonable doubt. Charles's constitutional argument, by contrast, is an affirmative defense, *see* 22 C.J.S. *Criminal Law: Substantive Principles* § 46 (2020), to which standard preservation rules apply even in bench trials; a defendant who fails to raise an affirmative defense to the district court in a bench trial cannot raise that defense for the first time on appeal, unless one of the exceptions to our preservation doctrine applies. *See State v. Bond*, 2015 UT 88, ¶¶ 14–15, 36, 361 P.3d 104 (holding, in the context of an unpreserved federal constitutional claim, that the defendant has the "high burden" on appeal to show that plain error or another exception applies); *see also State v. Sagal*, 2019 UT App 95, ¶ 25, 444 P.3d 572 (applying *Bond*'s holding—that "unpreserved federal constitutional claims are not subject to a heightened

(continued…)

¶21 Turning to the merits of that challenge, Charles correctly points out that the State elicited no testimony regarding Daughter's age. Indeed, the State concedes that "there is no evidence of [Daughter's] exact age."[5] The State points only to Mother's references to Daughter and Friend as "little kids" and "little girls," and asserts that these references constitute sufficient evidence upon which the district court could have grounded its finding that Charles's actions occurred "in the presence of a child who is under 14 years of age." *See* Utah Code Ann. § 76-9-702.5(2)(a). We acknowledge that district courts, sitting as factfinders in bench trials, are permitted to draw

---

(…continued)
review standard"—in an appeal from a bench trial). For this reason, we may consider Charles's challenge to the sufficiency of the evidence with regard to Daughter's age, because that is an element of the offense on which the State bore the burden of proof and the district court had to make a finding, but we may not consider—absent a preservation exception—Charles's unpreserved constitutional arguments, which constitute affirmative defenses on which the district court was neither required to nor given an opportunity to rule. *See supra* ¶¶ 10–12.

5. In a footnote in its brief, the State asserts—without citation to the record—that Daughter "was present in the courtroom . . . throughout the proceedings." The State's appellate counsel was also the State's trial counsel, and we have no reason to doubt the veracity of counsel's representation. But there is no evidence in the record to indicate Daughter's presence in the courtroom: she did not testify as a witness, and there is no mention of her presence—let alone any description of her age or appearance—in the transcript of the trial. Accordingly, we cannot consider this bare assertion by the State in our analysis of the evidence available to the district court. *See* Utah R. App. P. 11(a).

reasonable inferences from the evidence presented. *See State v. Briggs*, 2008 UT 75, ¶ 11, 197 P.3d 628 (noting that a district court's findings in a criminal bench trial may "include inferences drawn from the evidence"). But in criminal cases, proof must be beyond a reasonable doubt, and any inferences drawn from the evidence must comport with this stringent burden of proof. *See State v. Workman*, 852 P.2d 981, 987 (Utah 1993) (stating that "[c]riminal convictions cannot rest on conjecture or supposition; they must be established beyond a reasonable doubt," and that "speculative inferences" cannot satisfy that standard); *see also State v. Whitaker*, 2016 UT App 104, ¶¶ 12, 17, 374 P.3d 56 (stating that a defendant's intent could be inferred from circumstantial evidence, but that such evidence needed to satisfy the "reasonable doubt" standard, and determining that it did not).

¶22 Utah appellate courts have not had occasion to address whether such vague references to a victim's age as "little kid" or "little girl," without more, could be enough to sustain a finding, beyond a reasonable doubt, that the victim was under the age of fourteen. But other authority suggests that such statements are not enough on their own. At least one appellate court has faced precisely this issue; that court overturned a conviction of lewd and lascivious acts in the presence of a child under the age of fourteen, explaining that "mere reference to a witness as a 'little child' or a 'little girl' does not alone justify the conclusion that she was a child under the age of fourteen years." *See People v. Levoy*, 194 P. 524, 525 (Cal. Ct. App. 1920). And more recently, one Utah district court reached the same conclusion, refusing to admit prior bad acts evidence under rule 404(c) of the Utah Rules of Evidence—which allows propensity evidence if the prior bad acts concern "child molestation," a term requiring the victim to be under fourteen—when the only evidence of the victims' age was a statement that they were "little girls." *See State v. Ferguson*, 2011 UT App 77, ¶ 6, 250 P.3d 89 (describing the district court as having ruled that "little girls" was too "nondescript" a characterization to support an inference that the

victims were under fourteen; that part of the district court's ruling was not at issue on appeal); *see also* Utah R. Evid. 404(c).

¶23 Moreover, in *Washington v. State*, 645 So. 2d 915 (Miss. 1994), the court overturned a conviction for "sexual battery" of "a child under the age of fourteen," even though the victim had testified during the trial, because "there was no direct oral testimony concerning the age of the youthful victim." *Id.* at 917. In that case, the State argued that, even though it had forgotten to ask the victim how old she was, the factfinder could infer that the victim was younger than fourteen through "ocular perception" of her while she was testifying, and from testimony that "she had teenage babysitters." *Id.* at 916, 919. The court found these arguments unavailing, noting that "[t]here was no direct oral testimony presented to the jury from which a reasonable, hypothetical juror could find that [the victim] was under fourteen years of age," and that "the State . . . failed to place anything in the record to enable [the appellate court] to review the ocular and auditory aspect of the proof." *Id.* at 916, 919; *accord State v. Day*, 735 So. 2d 56, 60 (La. Ct. App. 1999) (holding that circumstantial evidence, including the factfinder's ability to view witnesses at trial, was sufficient to support a finding that one victim was under eighteen, because that victim was described as being in "elementary school," but was insufficient to support that same finding with regard to two other victims who were described as being in high school).

¶24 We agree with Charles that the evidence contained in the record in this case is insufficient to support a finding, beyond a reasonable doubt, that Daughter was under the age of fourteen. Daughter did not testify, and there is no record evidence that the district court actually saw Daughter, and even if there were, that may not have sufficed as proof of her age in any event. *See Washington*, 645 So. 2d at 919. The State did not ask either of its witnesses—Mother or the responding officer—any questions about Daughter's age. There was no evidence—as there was in

*Day*—that Daughter was in any particular grade at school, or even that she attended elementary school. *See Day*, 735 So. 2d at 60. The only evidence of Daughter's age to which the State can point is Mother's references to Daughter and Friend as "little kids" and "little girls." But this is not enough. On occasion, people refer to fourteen-year-olds as "little girls," including in court cases. *See, e.g., State v. Grider*, No. 75720, 2000 WL 146544, at *2, *3 (Ohio Ct. App. Feb. 10, 2000) (in rape case, defendant referred to a fourteen-year-old victim as a "little girl"); *Martin v. Horton*, No. 344875, 2019 WL 2145710, at *3 (Mich. Ct. App. May 16, 2019) (in negligence action, fourteen-year-old accident victim referred to herself as a "little girl"). Indeed, as evidenced by the citations in the margin,[6] we note that interested observers, including the victim herself, often referred to Elizabeth Smart—

---

6. *See, e.g., United States v. Mitchell*, 706 F. Supp. 2d 1148, 1160, 1173, 1203, 1214–15, 1216 (D. Utah 2010) (referring to fourteen-year-old Elizabeth Smart and other similarly aged targets of the defendant as "young girls"); *see also* Pat Reavy et al., *Elizabeth Smart Describes Rapes, Sex Abuse, Imprisonment, Threats*, Deseret News (Nov. 8, 2010), https://www.deseret.com/2010/11/8/20151342/elizabeth-smart-describes-rapes-sex-abuse-imprisonment-threats#courtroom-drawing-of-elizabeth-smart-on-the-stand [https://perma.cc/2BQL-KGZ4] (quoting Elizabeth Smart describing herself, from the witness stand at trial, as a "little girl" at the time she was kidnapped); Dean E. Murphy, *Utah Girl, 15, Is Found Alive 9 Months After Kidnapping*, N.Y. Times (Mar. 13, 2003), https://www.nytimes.com/2003/03/13/us/utah-girl-15-is-found-alive-9-months-after-kidnapping.html [https://perma.cc/9LQ3-HMDD] (quoting Elizabeth Smart's relatives as stating, upon learning that she had been found alive in 2003 at the age of fifteen, that "I don't think any little girl was prayed for more in the history of the world").

who was fourteen when she was abducted from her Salt Lake City home in 2002—as a "little girl" or a "young girl."

¶25 It would have been easy enough for the State to have asked Mother to state Daughter's age while Mother was on the witness stand. The State did not do so, and the remainder of the record does not contain sufficient circumstantial evidence to support a finding, beyond a reasonable doubt, that Daughter was under the age of fourteen at the time of the offense. Ultimately, we agree with the sentiments of the Mississippi Supreme Court in *Washington*, when it stated as follows:

> The fact that establishing a victim's age is rarely a problem for the prosecutor suggests that as a matter of policy, this Court should not routinely approve convictions where the State fails to put on reviewable proof of age, when age is an essential element of the crime. In fact, proof of age in the case at bar only would have required asking [the witness] one simple question: "How old [is the victim]?" It is rather apparent to this Court that the State simply left out this essential element of proof.

645 So. 2d at 920. We therefore conclude that insufficient evidence exists in the record before us to support one of the essential elements of the crime of lewdness involving a child, and that Charles's conviction on that count cannot stand.

III

¶26 Although we determine that the evidence was insufficient to sustain Charles's conviction on count 1, the State's failure of proof on that count concerns an element that is only part of count 1, and not count 2. A defendant can, of course, be convicted of general lewdness, a class B misdemeanor, even if the victim is "14 years of age or older." *See* Utah Code Ann. § 76-

9-702(1) (LexisNexis Supp. 2019). After trial in this matter, the district court appeared to conclude that all of the elements of count 2 were met as well, but determined that any conviction on count 2 for general lewdness would merge into Charles's conviction on count 1 for lewdness involving a child. Accordingly, the district court declined to enter a judgment of conviction on count 2.

¶27    Nothing in our decision today precludes a conviction of Charles on count 2. We have rejected his constitutional argument, as well as his argument that his actions did not constitute an "other act of lewdness." But neither side briefed the issue of what should happen with count 2 in the event that we reversed Charles's conviction on count 1 due to lack of proof of Daughter's age. Under these circumstances, we think it best to remand the case to the district court for further proceedings regarding count 2.

CONCLUSION

¶28    We reject Charles's constitutional arguments, as well as his assertion that his actions did not constitute an "other act of lewdness" under the lewdness statutes. However, we agree with Charles that the State failed to present sufficient evidence of Daughter's age, and that Charles's conviction on count 1 for lewdness involving a child must be reversed. We remand the case for entry of a judgment of acquittal on that count, as well as for further proceedings regarding the disposition of count 2.

———————