**2023 UT App 141**

# THE UTAH COURT OF APPEALS

BOUNTIFUL CITY,
Appellee,
*v.*
PETER ALEXANDER SISCH,
Appellant.

Opinion
No. 20220599-CA
Filed November 24, 2023

Second District Court, Bountiful Department
The Honorable David J. Williams
No. 211800281

Peter Daines, Attorney for Appellant

Heather Waite-Grover, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and JOHN D. LUTHY concurred.

HARRIS, Judge:

¶1     The manager of a Smith's Marketplace store asked Peter Alexander Sisch to leave the parking lot next to the store. Sisch ignored the request and refused to leave the parking lot; a few minutes later, police officers arrived and removed Sisch from the premises. Sisch was later charged with various misdemeanor and infraction crimes, including criminal trespass, and was convicted after a bench trial. He appeals his conviction for criminal trespass, asserting that the prosecution did not elicit sufficient evidence that the "owner" of the property asked him to leave. We reject Sisch's arguments and affirm his conviction.

BACKGROUND[1]

¶2      One summer day, Sisch entered a Smith's Marketplace store (Smith's) in Bountiful, Utah. While inside, he purchased a pair of shoes at the self-checkout area, briefly interacted with a Smith's employee (Employee) there, and left. About an hour later, Sisch returned to the store to exchange the shoes for a different size; during this second visit, he again encountered Employee, who directed him to the customer service counter, where all returns and exchanges take place. After successfully making the exchange, Sisch left the store, but he then tarried in the parking lot on the northeast side of the building. In this area, there is a "kind of a cage" located outside the building that contains a number of "propane canisters." It is also an area in which Smith's "baggers" retrieve shopping carts used by customers. And this part of the parking lot is primarily used for employee parking, though there is no signage indicating that only employees may park there. The parking lot in general, and this area in particular, is open to members of the public.

¶3      Sometime after Sisch left the store, the manager of the store (Manager), wearing a Smith's shirt and name badge, exited the building and noticed that Sisch was "pacing back and forth next to the employees' cars" and looked "lost or upset." Manager approached Sisch and asked him "to leave the premises." Sisch refused, "started getting pretty excited," and asked Manager if he "wanted to fight." Sisch also asked Manager if he was affiliated with "the store," to which Manager answered affirmatively.

¶4      Manager called a co-worker (Co-worker), who was then inside the store, informed her of the situation and asked her to call

---

1. "On appeal from a bench trial, we view and recite the evidence in the light most favorable to the trial court's findings; we present additional evidence only as necessary to understand the issues on appeal." *State v. Jack*, 2018 UT App 18, n.2, 414 P.3d 1063.

911. As Co-worker called 911, she walked outside with Employee, approaching Sisch. At that point, Sisch was "throwing his hands in the air . . . screaming vulgarity" and engaging in "very loud, aggressive yelling."

¶5 A police officer (Officer) arrived "between two to three minutes" after Co-worker's 911 call. Prior to identifying himself as a police officer, and before Sisch noticed him, Officer observed Sisch's behavior. He witnessed Sisch yelling profanities and acting in an agitated manner. Officer then identified himself to Sisch and asked him about the situation. Sisch told Officer, "[T]he employees are saying that I'm loitering, but I'm not loitering because I just spent $100 in there at their business, so I can go wherever I want."

¶6 Further, Sisch was "rambling" and going from "topic to topic," which concerned Officer and prompted him to ask Sisch for identification. Sisch refused, the situation escalated, and Officer placed handcuffs on him. However, once Officer removed the cuffs a few minutes later, Sisch calmed down and began offering information. During the conversation, Sisch "indicated that he talked to [a] guy in the back parking lot," and he acknowledged that a Smith's employee had "asked him to leave."

¶7 Later, Bountiful City (the City) charged Sisch with criminal trespass, disorderly conduct, and failure to disclose his identity. The case proceeded to a bench trial, where the City called four witnesses in its case-in-chief: Employee, Manager, Co-worker, and Officer. Each gave testimony regarding the events described above. Sisch defended the trespass charge largely on two grounds: first, that the property was open to the public and that he had a right to be there as a Smith's customer and, second, that Sisch was not in a position to know that Manager—the person who asked him to leave—had the authority to act on behalf of Smith's. Sisch did not argue, at trial, that Smith's was not the owner of the parking lot.

¶8     On that latter point—perhaps because it was not perceptibly contested at trial—the City did not offer a great deal of direct evidence. Manager testified that he was the "[s]tore manager" and that, in that capacity, he "ha[d] the authority to ask people . . . to leave the premises," and that he told Sisch "to leave the premises." Officer testified that the scene to which he responded was "a private parking lot owned and operated by Smith's." Co-worker testified that she called 911 to have the police "remove [Sisch] from our property." And in closing argument, based on this evidence, the City argued that, while Sisch had "lawfully entered" Smith's property, he had "refused to leave" that property "after he was directed to do [so] by an employee."

¶9     At the conclusion of the trial, the court found Sisch guilty of all three charges. In an oral ruling, the court stated that Sisch lawfully entered "an area of the [Smith's] parking lot that was open to the public," but found that Sisch was "asked to leave by somebody"—Manager—who had "authority to act for the owner." The court specifically noted that Manager "was wearing his name badge that identified him as a manager" and that Manager "identified himself [to Sisch] as the store manager," and the court found that Sisch "certainly knew that [Manager] was a store manager." The court also found that, after being asked, Sisch "refused to leave." Accordingly, the court found "that the City ha[d] met [its] burden of proof with regard to proving beyond a reasonable doubt the elements of criminal trespass."

## ISSUE AND STANDARD OF REVIEW

¶10     Sisch now appeals, challenging the sufficiency of the evidence supporting his criminal trespass conviction.[2] "In the context of a bench trial, when a defendant contends the evidence was insufficient to support a conviction, we review the court's

---

2. Sisch does not appeal any of his other convictions.

findings for clear error." *State v. Ayala*, 2022 UT App 1, ¶ 18, 504 P.3d 755. And in such situations, "we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if we otherwise reach a definite and firm conviction that a mistake has been made." *Id.* ¶ 15 (quotation simplified).

ANALYSIS

¶11 Sisch contends that the City failed to introduce evidence sufficient to satisfy one of the required elements of criminal trespass: that Smith's was the "owner" of the parking lot Sisch was asked to vacate. While we acknowledge that this specific issue was hardly the focal point of the City's evidentiary presentation, in our view the City submitted enough evidence in this regard to support a conviction.[3]

¶12 Utah's criminal trespass statute provides, in relevant part, that "[a]n actor commits criminal trespass if, . . . knowing the actor's . . . presence is unlawful, the actor enters or remains on . . . property to which notice against entering is given by . . . personal communication to the actor by the owner or someone with apparent authority to act for the owner." Utah Code § 76-6-

---

3. As noted, at trial Sisch never asserted that Smith's was not the owner of the parking lot, and he never argued that the City had failed to present sufficient evidence on that point. But this oversight does not present a preservation problem for Sisch, because a defendant in a criminal bench trial is "not required to take any action to preserve a challenge to the sufficiency of the evidence with regard to the statutory elements of the crime." *See State v. Charles*, 2020 UT App 154, ¶ 20 & n.4, 477 P.3d 492; *see also State v. Ayala*, 2022 UT App 1, ¶ 15, 504 P.3d 755 (stating that "challenges to sufficiency need not be expressly preserved in a bench trial context because the trial court necessarily determines sufficiency in making its conclusion as to guilt").

206(2)(b)(i). Here on appeal—as contrasted from the arguments he made before the trial court—Sisch does not assert that Manager lacked authority to act for Smith's; instead, he argues that the City failed to conclusively prove that Smith's was the "owner" of the parking lot. *See id.* As Sisch sees it, even if Manager had authority to act on Smith's behalf, the City failed to demonstrate that Manager had the necessary authority "to act for the owner" in telling him to leave the parking lot. *See id.*

¶13 There is no statutory definition of "owner" in the criminal trespass statute or in any of the statutory "definitions" sections that are directly applicable to that statute. *See id.* §§ 76-1-101.5, 76-6-101, -201, -206. In a situation like this, "where no specialized statutory definition is provided," we usually arrive at a definition by "interpret[ing] statutory language according to the plain meaning of its text." *See Vineyard Props. of Utah LLC v. RLS Constr. LLC*, 2021 UT App 144, ¶ 25, 505 P.3d 65 (quotation simplified), *cert. denied*, 509 P.3d 767 (Utah 2022). But here, the parties are in apparent agreement about what "owner" means in this context, and therefore we apply their agreed-upon definition to the facts of this case, without rendering any conclusive opinion as to the meaning of "owner" as used in Utah's criminal trespass statute.

¶14 In this case, Sisch posited in his opening brief that "'owner' includes not just the title holder" of the property but also "any tenant or other occupant with an exclusive or other possessory interest in the parking lot sufficient to exercise dominion over it." In response, the City did not take issue with this definition. We therefore proceed to evaluate the merits of Sisch's appeal using this working definition of the term "owner."

¶15 Under this definition, the City can meet its burden of proof in one of two ways. First, it can present evidence (for instance, from county land records or other similar sources) indicating that Smith's either owns record title to the real property upon which the parking lot is located, or that it possesses authority from the

record title holder to ask people to leave the property. Sisch correctly points out that the City made no effort to present any evidence regarding the identity of the record title holder of the land underneath the parking lot.[4]

¶16    Alternatively, the City can present evidence that Smith's is a "tenant or occupant" of the parking lot "with an exclusive or other possessory interest" in it "sufficient to exercise dominion over it." On this point, Sisch correctly points out that the City did not place into evidence any lease agreement or other document indicating that Smith's has a leasehold (or other tenancy) interest in the parking lot property. And Sisch contends that the evidence that *does* exist in the record on this point is insufficient to support the trial court's finding that Manager had authority to act for the "owner" of the parking lot. On this point, we disagree.

¶17    When judges sit as factfinders in bench trials, they may not base their verdicts on speculation, but they "are permitted to draw reasonable inferences from the evidence presented." *State v. Charles*, 2020 UT App 154, ¶ 21, 477 P.3d 492. "To be sure, the line separating 'speculation' from 'reasonable inference' can at times

---

4. Indeed, on appeal Sisch asks us to take judicial notice of the fact that a "publicly-accessible and self-authenticating title search of the Davis County official recorder demonstrates that Smith's does not in fact own the parking lot." Sisch did not attempt to introduce any such evidence at trial, and we decline Sisch's invitation to take judicial notice of it now. *Cf. Finlayson v. Finlayson*, 874 P.2d 843, 847 (Utah Ct. App. 1994) ("Judicial notice is taken on appeal only where there is a compelling countervailing principle to be served. With very limited exceptions, judicial notice should not be used to get around the rule precluding raising issues for the first time on appeal." (quotation simplified)). But even if we were to take judicial notice of the fact that Smith's is apparently not the record title owner of the parking lot, under Sisch's own definition of "owner" that would not resolve the relevant question.

be faint." *State v. Prisbrey*, 2020 UT App 172, ¶ 23, 479 P.3d 1126, *cert. denied*, 485 P.3d 946 (Utah 2021). An "inference" is "a conclusion reached by considering other facts and deducing a logical consequence from them." *Salt Lake City v. Carrera*, 2015 UT 73, ¶ 12, 358 P.3d 1067 (quotation simplified). "On the other hand, 'speculation' is the act or practice of theorizing about matters over which there is no certain knowledge at hand." *Id.* (quotation simplified). As our supreme court has explained, "the difference between an inference and speculation depends on whether the underlying facts support the conclusion." *Id.*; *see also Salt Lake City v. Gallegos*, 2015 UT App 78, ¶ 10, 347 P.3d 842 (stating that "inferences drawn from facts in evidence are appropriate," but "inferences drawn from inferences are not" (quotation simplified)), *cert. denied*, 362 P.3d 1255 (Utah 2015). Moreover, "in criminal cases, proof must be beyond a reasonable doubt, and any inferences drawn from the evidence must comport with this stringent burden of proof." *Charles*, 2020 UT App 154, ¶ 21; *see also State v. Workman*, 852 P.2d 981, 985 (Utah 1993) ("A guilty verdict is not legally valid if it is based solely on inferences that give rise to only remote or speculative possibilities of guilt.").

¶18    In this case, the evidence introduced at trial was sufficient to support a finding, arrived at beyond a reasonable doubt, that Smith's had a possessory interest in the parking lot sufficient to exercise dominion over it. Perhaps most significantly, Officer testified—quite directly—that the parking lot was "owned and operated by Smith's." On appeal, Sisch criticizes Officer's statement as "unsupported" and "lacking in foundation," but he lodged no objection to the admissibility of Officer's statement at trial. Accordingly, Sisch has not preserved for appellate review any objection to that statement, and he does not ask us to evaluate the court's admission of this statement for plain error or assert that Sisch's trial counsel was ineffective for failing to lodge an objection. Under these circumstances, Officer's statement constituted evidence that the trial court was allowed to consider.

¶19    In addition to Officer's statement, the trial court heard Manager testify that he had authority to remove people "from the premises" and that he asked Sisch to leave those premises. In context, Manager's use of the term "premises" indicates that the relevant "premises" included the parking lot. Moreover, the court also heard Co-worker's testimony that she called 911 to have the police remove Sisch "from our property"; in context, "our" refers to Smith's and "property" refers to the parking lot.

¶20    Even aside from this direct testimony, there existed additional circumstantial evidence indicating that Smith's was the owner of the parking lot. The part of the lot in which Sisch was found was a section in which employees parked their cars and in which Smith's baggers retrieved shopping carts. That section also included an outdoor "cage" where Smith's kept propane canisters related to its business. And the trial court might also have drawn on its own common-sense understanding of how big-box retailers operate and inferred—especially in the absence of any contest on the point—that it would be extremely unlikely for a retailer like Smith's to operate a large grocery store in Utah without rights to the parking lot next to the store. Indeed, even Sisch thought he had a right to be in the lot simply because he made a purchase at Smith's, telling Officer that he couldn't be loitering because he had "just spent $100 in" the store, a fact he thought gave him the right to "go wherever [he] want[ed]" in the parking lot.

¶21    All of this evidence regarding Smith's relationship with the parking lot was unrebutted and unchallenged by Sisch during trial. In our view, the evidence the City presented—including both the direct evidence as well as reasonable non-speculative inferences drawn from the circumstantial evidence—was sufficient to support a determination, arrived at beyond any reasonable doubt, that Smith's maintained a possessory interest in the parking lot sufficient to exercise dominion over it.

CONCLUSION

¶22 The City provided sufficient evidence to support the trial court's determination that Manager had authority to act for the "owner" of the parking lot. We therefore reject Sisch's arguments and affirm his criminal trespass conviction.

———