**2016 UT App 118**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
SHONI PLEXICO,
Appellant.

Memorandum Decision
No. 20140590-CA
Filed June 3, 2016

Fifth District Court, Cedar City Department
The Honorable G. Michael Westfall[1]
The Honorable Keith C. Barnes
No. 131500464

J. Bryan Jackson, Attorney for Appellant

Sean D. Reyes, Deborah L. Bulkeley, and Thomas B.
Brunker, Attorneys for Appellee

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGE STEPHEN L. ROTH concurred. JUDGE GREGORY K.
ORME dissented.

TOOMEY, Judge:

¶1     In this case, we must determine whether the jury heard
sufficient evidence to convict Shoni Plexico of tampering with a
witness, a third degree felony. We must also determine whether
the trial court exceeded its discretion by not allowing the jury to
hear that Plexico had been acquitted of the underlying charges
and whether the jury instructions were erroneous. We affirm.

---

1. Judge Westfall presided over the jury trial; Judge Barnes
denied Plexico's motion for a new trial.

BACKGROUND

¶2     In August 2013, Plexico allegedly fought with her boyfriend (Boyfriend) and a friend (Friend).[2] In a written statement to the investigating police officer, Friend reported that Plexico hit Boyfriend. The officer issued Plexico a citation for two assault charges, each a class B misdemeanor. Approximately two hours later, the officer interviewed Friend and Plexico. In the interview and a second written statement, Friend told the officer that Plexico asked her to change her earlier statement and to tell the officer that Plexico did not hit Boyfriend. The officer then arrested Plexico for tampering with a witness.

¶3     Plexico's assault charges and the witness tampering charge were severed, and in March 2014 she was acquitted of the assault charges. A few weeks later in the witness tampering case, Plexico moved the court to suppress any evidence regarding the assault charges, but asked that if such evidence were introduced, the court give a cautionary instruction for the jury to use it only for the specific purpose for which it was admitted. Plexico also asked that if the court found it necessary to admit the evidence, the court would advise the jury that she was acquitted of the underlying assault charges.

¶4     The court determined it would not admit evidence that Plexico had been acquitted of the assault charges, explaining that just as allowing evidence of a conviction would unduly prejudice a jury, so would evidence of an acquittal. The court also cautioned that the State should only submit evidence

---

2. "In reviewing a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict. We recite the facts accordingly." *State v. Boyd*, 2001 UT 30, ¶ 2, 25 P.3d 985 (citation and internal quotation marks omitted).

"sufficient to establish the element of her knowledge of an official proceeding being pending" as required by the governing statute. Thus, the court admonished that the State needed only to show that "as a result of [a] fight [Plexico] was issued a citation and was aware of that citation." It also determined it would instruct the jury "not to consider [the] citation" or the "circumstances that resulted" in it. Plexico's counsel responded, "I think if the Court gives that admonition as the evidence comes in that will suffice."

¶5 During trial, the jury heard testimony from Friend, the police officer, Plexico, and Boyfriend regarding Plexico's interactions with Friend after Plexico received the assault citation. Friend testified that Plexico asked her to lie by asking her to tell the police officer that Plexico did not hit Boyfriend. In contrast, Plexico testified she did not ask Friend to lie, but, instead, to tell the truth about the assault. Boyfriend testified that Plexico did hit him. The police officer testified that Boyfriend's and Friend's statements about the assault were consistent and, in his opinion, Plexico had asked Friend to make a false statement.

¶6 In an attempt to impeach Friend's credibility, on cross-examination defense counsel attempted to ask about her first statement to the police officer and her testimony at the assault trial. The State objected to defense counsel's line of questioning, and the court excused the jury so that it could discuss with counsel the appropriateness of introducing Friend's prior testimony and statements. The court was concerned that defense counsel was attempting to elicit information to show that Friend had a propensity to lie and that this propensity had led to an acquittal of the assault charges. Defense counsel explained to the court that because the witness tampering charge was severed from the assault charges, he was deprived of the opportunity to "let the jury be aware of what had transpired that led up to [Plexico] going over to [Friend's] house" after being cited for the assault. He further claimed that "[t]he reality of it is [Friend and

Boyfriend] chose basically to file a report against [Plexico] not because they had been assaulted" but for some other reason. In her first statement regarding the assault, defense counsel explained, Friend omitted the fact that a handgun was involved and "picked and [chose] . . . what [she] wanted to report." "[W]hen we questioned [Friend] about that in the last case," defense counsel claimed, "[it] became obvious to everybody that [Friend was] abusing the process." He argued, "That's really what's going on here. Witness tampering is all wrapped-up in [Friend's] misuse of the process to bring false charges against [Plexico] regarding assault."

¶7     The court responded that what happened at the assault trial was "irrelevant," explaining that "[i]t doesn't matter what happened in the justice court because as soon as you present evidence that something happened in the justice court, now this jury is going to be asked to determine whether the justice court jury believed or didn't believe [Friend]." The court specified that it had "no idea why [the jurors in the assault trial] reached the verdict that [they] did," and it was too speculative to assume the jury in the assault case "said [Friend was] a liar." It concluded it would not allow defense counsel to offer evidence showing that Friend's statements about the assault were inconsistent with her testimony at the assault trial unless defense counsel could offer Friend's prior statements that were "somehow relevant to what [Plexico] told her" about changing her statement. It explained, "[I]f you want to open that door and go into the facts and circumstances because you think it's relevant to . . . your client [telling Friend to change her statement], I'll allow that . . . , but I'm also going to instruct the jury that . . . the outcome of that case has nothing to do with this case."

¶8     Before deliberations, the State and Plexico's defense counsel finalized jury instructions for the court to use, which the court then approved and gave. Among other instructions, the court told the jury that Plexico could not be found guilty unless

she had the "culpable mental state." In particular, the court recited jury instruction ten, stating that "[i]n this case the plaintiff must prove that the defendant engaged in the alleged criminal conduct and that the defendant did so intentionally, knowingly or recklessly with respect to each element of the crime." The court then read jury instruction eleven, which provided the elements of the offense. It then defined "knowingly" and "intentionally."[3]

¶9    The court also gave the jury a cautionary instruction "on how to consider the evidence presented regarding the defendant's alleged prior acts." It stated,

> It would be inappropriate for this jury to find the defendant guilty upon the pending charge because one or more members of the jury suspected or believed the defendant should have been found guilty of the charges for which she was initially cited. You are instructed that you shall not speculate about what resulted from that initial citation. It is however, appropriate for you to consider the circumstances when determining whether or not the defendant committed the present offense . . . .

Plexico's counsel did not object to the jury instructions.

¶10    The jury found Plexico guilty, and the court sentenced her to an indeterminate prison term of up to five years. The court suspended the prison term and instead sentenced her to thirty days in jail and twenty-four months of probation. Plexico moved the court for a new trial and asked it to stay her jail term pending

---

3. We note that the court did not define "recklessly." But because Plexico does not challenge this omission, we do not address this issue further.

appeal, arguing, among other things, that the jury had been misled and that the court erred by not allowing the jury to hear evidence that she had been acquitted of the underlying assault charges. To support her argument, she attached an affidavit from one of the jurors which indicated the jury assumed Plexico was convicted of the underlying charges. The court denied her motion for a new trial but granted the motion to stay her sentence pending appeal.

## ANALYSIS

### I. Sufficiency of the Evidence

¶11 On appeal, Plexico first contends there was insufficient evidence for the jury to convict her of witness tampering. She essentially argues that "merely asking a friend a favor to lie about what happened" was insufficient to convict her. Plexico asserts the plain language of the witness tampering statute did not adequately prohibit her conduct, arguing it "expands application of the language of the charging statute to include conduct which is not criminal misconduct."[4] We disagree.

---

4. The State asks us not to address Plexico's sufficiency of the evidence challenge, arguing that it is unpreserved. Generally, we will not consider an issue on appeal unless it has been preserved. *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828. "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on [it]." *Id.* (alteration in original) (citation and internal quotation marks omitted). Here, although Plexico did not articulate her challenges to the evidence well, she raised the issue that something more than asking a favor was required, and argued "there [has] to be a substantial effort made in changing a person's position to constitute attempt." In response, the court suggested she draft a jury instruction defining "attempt." She

(continued…)

¶12 "When examining the sufficiency of the evidence in a criminal jury trial, we begin with the threshold issue of statutory interpretation, which we decide as a matter of law." *State v. Widdison*, 2000 UT App 185, ¶ 16, 4 P.3d 100 (citation and internal quotation marks omitted). But "'we will reverse a conviction only when the evidence, viewed in light of our interpretation of the statute, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he [or she] was convicted.'" *Id.* (alteration in original) (quoting *State v. Fisher*, 972 P.2d 90, 97 (Utah Ct. App. 1998)). This standard of review is highly deferential. *State v. Nielsen*, 2014 UT 10, ¶ 30, 326 P.3d 645.

¶13 Plexico argues that "[t]o ask a friend, as a favor, to lie for them certainly qualifies as being indecorous and perhaps inappropriate" but is not "in and of itself criminal." We agree; generally asking a friend to lie may not be criminal. But asking a friend to lie for the purpose of preventing an official proceeding or to testify falsely is indeed a crime. Section 76-8-508 provides,

> A person is guilty of the third degree felony of tampering with a witness if, believing that an official proceeding or investigation is pending or about to be instituted, or with the intent to prevent an official proceeding or investigation, he attempts

(…continued)

also moved for a directed verdict, arguing "there was no change in the testimony." But the court denied that motion, noting that the evidence "made out a prima facie case" and it was "for the trier of fact to determine whether [Friend's] testimony [was] believable or not." As a result, Plexico's challenge on appeal does not assert new theories or raise new issues not presented to the court, and is therefore preserved. *See id.* ¶¶ 15–16.

> to induce or otherwise cause another person to . . .
> testify or inform falsely.

Utah Code Ann. § 76-8-508(1) (LexisNexis 2012). Thus, based on the plain language of the statute, to convict Plexico the jury must have found that she (1) knew an official proceeding was pending or intended to prevent an official proceeding and (2) attempted to get Friend to testify or inform falsely. *See id.* This does not only require the jury to find that Plexico attempted to induce her friend to lie; it also requires that the lie involved an official proceeding. *See id.* Moreover, the statute explicitly requires the jury to determine that Plexico asked Friend to "testify or inform falsely," as opposed to testify or inform truthfully. *See id.* Thus, to the extent that Plexico challenges the sufficiency of the evidence based on the interpretation of the governing statute, we cannot conclude the court erred, because the plain language of section 76-8-508 makes it illegal to attempt to induce or to ask someone to lie with regard to an official proceeding, such as a proceeding resulting from an assault citation.

¶14    To challenge the sufficiency of the evidence after a jury trial, a defendant must "marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict." *State v. Rudolph*, 2000 UT App 155, ¶ 18, 3 P.3d 192 (citation and internal quotation marks omitted). "[A] party challenging a factual finding or sufficiency of the evidence to support a verdict will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal [the evidence]." *See Nielsen*, 2014 UT 10, ¶ 42.

¶15    Plexico vastly understates the evidence supporting her conviction of tampering with a witness. She fails to address whether sufficient evidence was presented to establish she knew an official proceeding was pending and asked Friend to inform or testify falsely. Instead, Plexico focuses her arguments on a few isolated statements made during trial to show that her "version

of why she went to see her friend [was] different" from what Friend testified to. Her broad assertions and failure to marshal the evidence supporting conviction greatly undermine our assessment of this claim. *See id.* ¶ 44.

¶16   At trial, Friend testified Plexico asked her to "lie to the cops and say that she never hit [Boyfriend]." She testified that the first statement she made to the police officer regarding the alleged assault was accurate and Plexico "tried to make [her] change [her] statement." She explained that Plexico "didn't want to go to jail." Friend and Boyfriend each testified that they coordinated their statements regarding the assault so that Plexico would be arrested but did not do the same with their statements regarding the witness tampering charge and confirmed that Plexico hit Boyfriend.

¶17   In contrast, Plexico recalled that after she received the assault citation, Friend asked her why there were two charges and told Plexico one of the two charges "shouldn't be there." Believing the second charge was a mistake, Plexico called the police officer to ask him to drop it. Later in her testimony, Plexico admitted she had not been "very truthful" when the officer interviewed her about the alleged assault, but insisted she never asked Friend to change her statement; rather, she merely talked to Friend about the citation because she wanted to know "why [Friend] had lied." She emphasized that her "only lie" was telling the officer she did not hit Boyfriend, and she only lied because she felt pressured.

¶18   Implicitly, the jury was charged with determining whether Plexico's asking Friend to tell the police officer she did not hit Boyfriend was equivalent to her asking Friend to inform or testify falsely. Although Plexico's testimony contradicts that of Friend and Boyfriend, there was sufficient evidence that she hit Boyfriend and asked Friend to testify otherwise. In light of this evidence, we cannot conclude that "reasonable minds must

have entertained a reasonable doubt about the essential elements" of the tampering with a witness charge. *See State v. Nielsen*, 2014 UT 10, ¶ 49, 326 P.3d 645 (citation and internal quotation marks omitted).

## II. Plexico's Acquittal

¶19    Plexico next argues the trial court abused its discretion when it prevented the jury from hearing evidence that she was acquitted of the assault charges. She argues "this was a misapplication of [the Utah Rules of Evidence], particularly Rules 403 and 404." Plexico asserts the court did not make the proper admissibility analysis for whether evidence of her acquittal could have been admitted for "a proper non-character purpose under Rule 404(b)" and erred in determining that her acquittal on the underlying assault charges was not relevant.[5]

---

5. Plexico also briefly raises two additional challenges regarding her acquittal. First, she argues the court abused its discretion by not allowing evidence of her acquittal through Friend's prior statements. It is unclear how this relates to the relevance of her acquittal, and although Plexico cites the Utah Rules of Evidence and two criminal cases regarding the court's ability to admit prior inconsistent statements, she offers no analysis and does not apply the rules to the facts. Second, Plexico argues the court abused its discretion by denying her motion for a new trial because a juror's affidavit gave "rise to an allegation of jury misconduct during deliberation." But Plexico offers no case law or citations to the record to support her argument. Indeed, the only law she cites is rule 606(b) of the Utah Rules of Evidence which states the "court may not receive a juror's affidavit" regarding the jury deliberations. She also fails to explain how her generally inadmissible juror affidavit meets an exception to the rule. Neither argument is adequately developed, so we decline to address them. *See State v. Thomas*, 961 P.2d 299, 305 (Utah

(continued…)

¶20    Rule 404(b) of the Utah Rules of Evidence instructs that "[e]vidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." Utah R. Evid. 404(b)(1). In determining whether evidence of other acts is admissible, "the trial court must first determine whether the . . . evidence is being offered for a proper, noncharacter purpose," *State v. Nelson-Waggoner*, 2000 UT 59, ¶ 18, P.3d 1120, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Utah R. Evid. 404(b)(2). "[I]f the court determines that the evidence is being offered only to show the defendant's propensity to commit crime, [or not commit crime,] then it is inadmissible and must be excluded at that point." *See Nelson-Waggoner*, 2000 UT 59, ¶ 18 (citation and internal quotation marks omitted).

¶21    Even if the court concludes that the evidence is being offered for a proper purpose, it must still review the evidence under rules 402 and 403. Rule 402 limits admission of evidence to that which is relevant, defined as having "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Utah R. Evid. 401, 402. The Utah Supreme Court has emphasized that "unless the other crimes evidence tends to prove some fact that is material to the crime charged—other than the defendant's propensity to commit crime—it is irrelevant and should be excluded by the court pursuant to rule 402." *State v. Decorso*, 1999 UT 57, ¶ 22, 993 P.2d 837. Thus, "evidence of a

---

(…continued)
1998) (explaining that rule 24(a)(9) of the Utah Rules of Appellate Procedure "requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority").

common plan, scheme, or manner of operation is admitted [only] where it tends to prove some fact *material* to the crime charged." *Id.* (alteration in original). Finally, the trial court must determine whether the evidence meets the requirements of rule 403, which provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Utah R. Evid. 403.

¶22 "[W]e review a trial court's decision to admit other acts evidence under rule 404(b) of the Utah Rules of Evidence under an abuse of discretion standard." *Nelson-Waggoner*, 2000 UT 59, ¶ 16. And, "[w]e review the record to determine whether the admission of other . . . acts evidence was scrupulously examined by the trial judge in the proper exercise of that discretion." *Id.* (citation and internal quotation marks omitted).

¶23 Here, the trial court determined it would not admit evidence that Plexico was acquitted of the assault charges, explaining that its decision was based on the same reasons it "would not allow [a prior conviction] to come to the jury," because such evidence "would unduly prejudice the jury." It later explained that what occurred at the assault trial was "irrelevant" unless it went to an element of the crime—whether Plexico believed an official proceeding or investigation was pending. The court also explained that allowing evidence of Plexico's acquittal would confuse the jury or mislead it by inviting speculation about what the jury in the assault case "believed or didn't believe."

¶24 Even if we assume that Plexico's acquittal on the assault charges was offered for some other noncharacter purpose, we cannot conclude the trial court abused its discretion when it found this evidence irrelevant and prejudicial. Plexico asks this court to assume that evidence of her acquittal is relevant to "connect [her] to being acquitted" of this crime. But she offers no

explanation for how the fact of her acquittal on the underlying assault charges might make it more or less probable she believed an official proceeding or investigation was pending or attempted to induce Friend to inform falsely—the offense for which she was charged in this case. Rather, she seems to ask the court to assume she was acquitted of the assault charges because she did not hit Boyfriend and that her acquittal was thus relevant to show that she merely asked Friend to testify truthfully, not falsely. But we will not speculate or make that presumption. As the trial court pointed out, we "have no idea why [the jury in the assault trial] reached the verdict that they did," and asking the jury in this case to speculate why the jury in the previous case acquitted her of the charges confuses the issues.[6] We therefore conclude the court did not exceed its discretion by preventing the jury from hearing evidence that Plexico was acquitted of the underlying assault charges.

_____

6. From the record, we know very little about the underlying charges. We know that Plexico was charged with two class B misdemeanor assault charges for what defense counsel describes as "slapping" Boyfriend and shoving Friend. But we do not know if she had affirmative defenses to those allegations. It is also not clear whether the jury acquitted Plexico of the assault charges because it did not believe that Plexico hit Boyfriend or because her conduct did not meet some other element of the crime. *See* Utah Code Ann. § 76-5-102 (LexisNexis 2012) (defining assault as either "an attempt, with unlawful force or violence, to do bodily injury to another" or "an act, committed with unlawful force or violence, that causes bodily injury to another or creates substantial risk of bodily injury to another"). Accordingly, we will not speculate as to why the jury in the underlying case acquitted Plexico of the assault charges or infer that, because she was acquitted, she did not hit Boyfriend and that Friend therefore lied in her statement.

### III. Jury Instructions

¶25   Finally, Plexico challenges the jury instructions. Because she proposed them and did not object to the trial court giving them, she concedes to our review of this issue under the plain error standard. *State v. Martinez*, 2013 UT App 154, ¶ 4, 304 P.3d 110; *see also* Utah R. Crim. P. 19(e) (explaining that "[u]nless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice"). To demonstrate plain error, Plexico must show "(1) that there was an error, (2) that it should have been obvious to the trial court, and (3) that it was harmful." *State v. Bond*, 2015 UT 88, ¶ 48, 361 P.3d 104. "Because [Plexico] bears the burden on plain error review, if any of the three elements is not satisfied, [her] claim fails." *See id.* ¶ 49.

¶26   Relying solely on *State v. Geukgeuzian* (*Geukgeuzian I*), 2002 UT App 130, 54 P.3d 640, Plexico argues the jury instructions were erroneous because they inadequately articulated the mens rea requirement of the crime. In *Geukgeuzian I*, this court determined it was reversible error for the trial court to omit "language referring to the required mental state" of the charged crime. *Id.* ¶ 9. In that case, the defendant was also charged with witness tampering. *Id.* ¶ 1. The trial court gave an instruction to the jury that "closely tracked the language of [Utah Code section 76-8-508]." *Id.* ¶ 9. But it "[did] not specify the culpable mental state required for attempting or inducing a person as described in the statute." *Id.* Determining that the lack of a mens rea instruction is reversible error, this court explained that "[b]ecause section 76-8-508 specifies no mens rea for the attempt or inducement element, the required mental state is governed by Utah Code Ann. § 76-2-102," which provides that knowledge or recklessness "shall suffice to establish criminal responsibility" in "[e]very offense not involving strict liability." *Id.* ¶¶ 8–9 (citations and internal quotation marks omitted). On certiorari, the Utah Supreme Court reversed *Geukgeuzian I* on other

grounds, holding that a jury instruction "may not be assigned as error" if a party "affirmatively represented to the court that he or she had no objection to the jury instruction." *State v. Geukgeuzian* (*Geukgeuzian II*), 2004 UT 16, ¶ 9, 86 P.3d 742.

¶27 Like the defendant in *Geukgeuzian I*, Plexico argues that the trial court committed plain error because the jury instructions it gave articulated no mens rea. *See* 2002 UT App 130, ¶ 9. She also argues that, although defense counsel did not object to the jury instructions, this did not invite the court's error because "there was no affirmative action taken with regard to the elements instruction." *See Geukgeuzian II*, 2004 UT 16, ¶ 9. The State responds that this error was invited because defense counsel affirmatively stated he had "no objection to the jury instructions." *See id.* In our view, the parties' arguments miss the mark.

¶28 Although the *Geukgeuzian* cases seem analogous, they are inapposite to Plexico's case. In the *Geukgeuzian* cases, as the supreme court pointed out, neither the State's nor the defendant's proposed instructions "contained direct reference to a separate culpable mental state apart from the language of the statute requiring that a defendant act 'believing that an official proceeding or investigation is pending or about to be instituted.'" *Id.* ¶ 4 (quoting Utah Code Ann. § 76-8-508(1)). There was also no separate mens rea requirement instruction, and the court read only those instructions proposed by the parties. *See id.* Thus, the court never instructed the jury regarding the required mental state of the offense in any manner. *See id.*

¶29 Here, the trial court more than adequately instructed the jury regarding the required mens rea of the offense. Specifically, it read jury instruction ten, which stated, "In this case the plaintiff must prove that defendant engaged in the alleged criminal conduct and that the defendant did so intentionally,

knowingly or recklessly with respect to each element of the crime." The court then read jury instruction eleven, which stated the statutory elements of tampering with a witness. Even further, in instruction twelve, the court instructed the jury that a person acts "knowingly or within knowledge with respect to his conduct or the circumstances surrounding his conduct when he is aware of the nature of his conduct or the existing circumstances." It also defined "intentionally."

¶30   "'The general rule for jury instructions is that an accurate instruction upon the basic elements of an offense is essential.'" *State v. Beckering*, 2015 UT App 209, ¶ 10, 358 P.3d 1131 (quoting *State v. Bird*, 2015 UT 7, ¶ 14, 345 P.3d 1141). "To determine if jury instructions correctly state the law, we look at the jury instructions in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case." *Id.* (citations and internal quotation marks omitted). Thus, "[i]f taken as a whole they fairly instruct the jury on the law applicable to the case, the fact that one of the instructions, standing alone, is not as accurate as it might have been is not reversible error." *State v. Harper*, 2006 UT App 178, ¶ 14, 136 P.3d 1261 (citation and internal quotation marks omitted).

¶31   Even though the elements instruction did not articulate the culpable mental state required for attempting or inducing a person to act, the court clearly instructed the jury that to find Plexico guilty, it must find that she acted "knowingly or recklessly with respect to each element of the crime." The court verbally instructed the jurors, and provided written instructions ten and twelve, which informed it of the required mens rea and explicitly defined "knowingly" and "intentionally." Thus, when considered as a whole, the jury instructions accurately instructed the jury of the basic elements of the offense and the required mens rea. We therefore conclude the instructions were not erroneous.

CONCLUSION

¶32    In sum, we affirm Plexico's conviction. Based on the plain language of the statute, and in light of the evidence in the record, we cannot conclude that "reasonable minds must have entertained a reasonable doubt [as to] the essential elements" of the tampering with a witness charge. *See State v. Nielsen*, 2014 UT 10, ¶ 49, 326 P.3d 645 (citation and internal quotation marks omitted). Moreover, the court did not exceed its discretion when it refused to allow the jury to hear evidence that Plexico was acquitted of the underlying assault charges. Finally, because the verbal and written instructions properly informed the jury of the required mens rea for the offense, there was no error in the jury instructions—invited or otherwise. We therefore affirm.

_____