2022 UT App 1

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JULIO AYALA,
Appellant.

Opinion
No. 20170928-CA
Filed January 6, 2022

Second District Court, Ogden Department
The Honorable Noel S. Hyde
No. 151901249

Cherise M. Bacalski and Emily Adams, Attorneys
for Appellant

Sean D. Reyes and Christopher D. Ballard, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGE JILL M. POHLMAN and SENIOR JUDGE KATE APPLEBY
concurred.[1]

MORTENSEN, Judge:

¶1 From 2010 to 2013, Julio Ayala was involved in multiple automobile accidents while driving his truck and trailer. Ayala filed claims with several insurance companies, and those insurers paid for, among other things, numerous chiropractic treatments and property damage claims. Ayala later admitted to a private investigator that he had not been injured in the accidents but nonetheless believed he had a right to receive

---

1. Senior Judge Kate Appleby sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

insurance benefits. After Ayala was criminally charged, the case was tried to the bench, and the court convicted Ayala on one count of a pattern of unlawful activity and one count of felony insurance fraud. Ayala appeals, claiming (1) that the trial court committed plain error when it convicted him based on insufficient evidence that his crime met the threshold for a third-degree felony and (2) that his counsel was ineffective for failing to call an expert witness to opine on interpretation errors in Ayala's interview with the private investigator. We affirm.

BACKGROUND

¶2    Between January 2010 and July 2012, Ayala was involved in five automobile accidents. In each accident, he was rear-ended by another vehicle. For three of those accidents—the first in January 2010, the second in December 2010, and the third in April 2012—Ayala filed claims with his insurance company, which in turn paid for chiropractic care for him and damage to his vehicle and trailer.

¶3    In March 2013, Ayala had another similar accident. When he again sought insurance benefits for alleged damage to his trailer, the insurance company sent a private investigator to interview him. Because Ayala speaks primarily Spanish, the private investigator provided an interpreter (Interpreter) to relay questions to Ayala and his attorney. Ayala's attorney, who was present during the interview, spoke English and Spanish and interjected several times to aid in and clarify the interpretation of the questions the investigator asked Ayala.

¶4    During the interview, Ayala admitted that he had not been injured in any of the accidents but still had submitted claims for chiropractic care, which his insurer then paid. Ayala stated that his insurance coverage entitled him to chiropractic treatments following the accidents, even if he had not been

injured. Ayala agreed with the private investigator that he had "received treatment for no reason" and added, "[S]ince I am covered because of my insurance and that's my right." At the end of the interview, Ayala affirmed that he had understood all the investigator's questions.

¶5     A complaint was made with the Insurance Fraud Division of the Utah Insurance Department, and the State charged Ayala with one count of a pattern of unlawful activity and two counts of insurance fraud. The pattern of unlawful activity count was connected to Ayala's insurance claims after the January 2010 accident, the December 2010 accident, and the April 2012 accident. The first insurance fraud count against Ayala—a third-degree felony—was related to his insurance claim for chiropractic care following the April 2012 accident. The second fraud count—a class-A misdemeanor—was related to Ayala's insurance claim for damage to his trailer following the March 2013 accident.

¶6     At a bench trial, where Ayala was represented by a different attorney, one of his arguments was that Interpreter "did not properly interpret during the interview," which resulted in Ayala "seeming to say that he had never been injured." But "[i]nstead of hiring an expert interpreter to testify about the problems with the interpretation," Ayala's trial counsel (Counsel) "chose to cross-examine" Interpreter.

¶7     The court convicted Ayala of engaging in a pattern of unlawful activity. Specifically, it concluded that Ayala had filed claims for chiropractic treatment following the January 2010 accident, the December 2010 accident, and the April 2012 accident, despite the fact that he had not been injured in those accidents. The court noted that when the private investigator asked Ayala about these three accidents, Ayala admitted—according to Interpreter—that he had not been injured and

believed it was his right to pursue insurance benefits even if he had not been injured.

¶8    The trial court also convicted Ayala on the felony insurance fraud count. The court again relied on the fact that Ayala had claimed and received insurance benefits following the April 2012 accident, despite having not been injured in that accident. Included in evidence relevant to this charge were claim forms showing that Ayala's chiropractor billed Ayala's insurer more than $1,900 for treatment.

¶9    The court, however, acquitted Ayala on the misdemeanor insurance fraud count. Although the State presented evidence that Ayala received multiple insurance payments for what appeared to be the same damage to his trailer, the court concluded that the State did not present evidence sufficient to convict him.

¶10    Ayala appealed. As part of his appeal, Ayala submitted a motion under rule 23B of the Utah Rules of Appellate Procedure in which he requested remand for entry of findings of facts to support his claim that Counsel was ineffective for "failing to call expert witnesses" who "would have testified about the numerous" interpretation errors in Ayala's interview. After this court granted that motion, both parties submitted supplemental briefing to the trial court, which in turn conducted a hearing and entered supplemental findings. The supplemental findings were based on (1) the testimony of Counsel and (2) the testimonies and report of two experts regarding interpretation issues surrounding the insurance investigator's interview with Ayala.

¶11    With regard to Counsel's awareness of the interpretation issues, the court found the following on remand:

- Counsel was aware of the deficiencies with the interpretation but believed he could rely on his

own fluency in Spanish to address any of its problems through cross-examination rather than calling on an expert to testify.

- Counsel believed that the testimonies from several chiropractors would objectively establish that Ayala was injured, and he considered the problems with the interpretation a "side-issue."

- In retrospect, Counsel wished he had called an expert to testify about issues with the interpretation.

¶12   About the testimonies of the two experts, the court made the following findings:

- The two expert interpreters' evaluations of the interview were based solely on the transcripts, and they did not listen to an audio recording of the interview.

- The first expert interpreter "acknowledged that a good portion of language is non-verbal. Vocal tone, eye contact, body language, and gestures do not come across in written translation, and an interpreter sitting next to the individual for whom they are interpreting may more easily be able to determine if the individual is understanding the interpretation."

- The second expert interpreter conceded that "he [was] missing some context and nuances that [could] not be ascertained solely from reviewing the transcript."

- The expert interpreters pointed out some words in the interpretation that could have been substituted with more accurate terms. The first expert noted that for the English word "injury," the Interpreter used Spanish language that typically refers "to hurt feelings or actual physical injury, depending

on the context." The expert explained that it would have been more accurate to employ different Spanish language that is "commonly used to describe a more serious injury."

- The second expert interpreter noted that when Ayala talked about his "right" to receive insurance benefits, a more accurate interpretation would have conveyed that Ayala believed he was "deserving" of receiving the benefits.

- Although the two expert interpreters "were credible" and their "expertise unquestioned[,] . . . many of the objections to the quality of [the] interpretation were more technical than practical."

- "The hearing testimony and report of the experts did not persuade the court that [the] interpretation was misunderstood by [Ayala] to any substantial degree, or that [Ayala's] responses during the insurance investigation were so misperceived and misstated as to obscure their essential meaning."

¶13　The court also made findings relevant to deficient performance and prejudice:

- Counsel was familiar with the facts of the case and could weigh the strengths and weaknesses of "the State's case as a basis for his conclusion that he could effectively cross-examine [Interpreter] instead of hiring an expert interpreter."

- Although testimony Counsel elicited from Interpreter on cross-examination was "not as technical and detailed" as the testimonies provided by the expert interpreters, it was nevertheless "comparable."

- The testimony Counsel elicited from Interpreter "mirror[ed]" the deficiencies of the interpretation

that were identified by the two expert interpreters, including the correct word for injury.

¶14　Although the court characterized them as findings of fact, it also made a number of determinations that are more akin to conclusions of law,[2] including the following:

- "There [was] insufficient evidence to establish that by not having an expert interpreter testify at trial, [Counsel's] performance as trial counsel fell below an objective standard of reasonableness."
- Counsel reasonably concluded that the case turned on the testimonies of the chiropractors that Ayala was injured because if Ayala was in fact injured, "then any misinterpreted statements during the interview were irrelevant."
- The testimonies of the two expert interpreters did "not significantly enhance the evidence presented at trial as to the weakness of the interpretation of

---

2. On the rule 23B remand, we asked the trial court to limit itself to making findings of fact. But of its own accord, the trial court expanded this mandate to encompass making legal conclusions. We clarify that the purpose of a rule 23B remand is for a trial court to "conduct hearings and take evidence as necessary to enter the findings of fact necessary to determine the claim of ineffective assistance of counsel. . . . The trial court will enter written findings of fact concerning the claimed deficient performance by counsel and the claimed prejudice suffered by appellant as a result, in accordance with the order of remand." *See* Utah R. App. P. 23B(e). Once the trial court completes these supplemental proceedings under a rule 23B remand, its findings of fact are transmitted to the appellate court, *see id.* R. 23B(f), which in turn makes legal conclusions about the "determination of a claim of ineffective assistance of counsel," *see id.* R. 23B(a).

the insurance investigation interview by [Interpreter]."

- "[T]here [was] insufficient evidence to conclude that the outcome of the trial would have been different had an expert interpreter testified at trial."

ISSUES AND STANDARDS OF REVIEW

¶15    Ayala raises two issues. He first asserts the trial court plainly erred in ruling that the State's insurance fraud charge rose to the level of a third-degree felony. Ayala specifically argues that the court erred because the State did not present evidence sufficient to show that he received at least $1,500 in fraudulent insurance benefits—the minimum threshold for a third-degree felony.[3] Ayala, believing the issue is unpreserved, asks that it be reviewed for plain error. But as our supreme court recently clarified, challenges to sufficiency need not be expressly preserved in a bench trial context because the trial court necessarily determines sufficiency in making its conclusion as to guilt. *See State v. Jok*, 2021 UT 35, ¶ 18, 493 P.3d 665 ("[U]nder rule 52(a)(3) [of the Utah Rules of Civil Procedure], a defendant is not required to make a motion to preserve a sufficiency of the evidence claim at a bench trial. Moreover, a sufficiency of the evidence claim is effectively preserved by the nature of a bench

---

3. In the issues section of his brief, Ayala argues that the court's error arose from its failure to make a factual finding that Ayala received at least $1,500 in connection with insurance fraud. But the substantive arguments under that section focus solely on the sufficiency of the evidence. We therefore decline to address whether the court was indeed required to make an explicit factual finding that Ayala fraudulently received more than $1,500 and instead focus on the sufficiency of the evidence.

trial and does not require making a specific motion."). Therefore, the lack of preservation is of no import here because we review a claim of insufficient evidence at a bench trial for clear error—the proper standard of review—by default. *See State v. Titus*, 2012 UT App 231, ¶ 2, 286 P.3d 941 ("Because we are asked to review the results of a bench trial for sufficiency of evidence, we will only reverse if the trial court's findings were clearly erroneous." (cleaned up)). And "when reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if we otherwise reach a definite and firm conviction that a mistake has been made." *State v. Gordon*, 2004 UT 2, ¶ 5, 84 P.3d 1167 (cleaned up). "An example of an obvious and fundamental insufficiency is the case in which the State presents no evidence to support an essential element of a criminal charge." *State v. Prater*, 2017 UT 13, ¶ 28, 392 P.3d 398 (cleaned up).

¶16    Second, Ayala contends that he received ineffective assistance when Counsel did not call an expert to testify that the interpretation provided during Ayala's interview was unreliable. "In ruling on an ineffective assistance of counsel claim following a rule 23B hearing, we defer to the trial court's findings of fact . . . ." *State v. King*, 2017 UT App 43, ¶ 13, 392 P.3d 997 (cleaned up).

ANALYSIS

I. Evidence Shows That Ayala Received
More Than $1,500 in Benefits

¶17    Ayala asks us to conclude that the trial court wrongly convicted him of felony insurance fraud because the evidence did not show that he received at least $1,500 in fraudulent insurance benefits—the minimum threshold for a third-degree felony. *See* Utah Code Ann. § 76-6-521(1)(b), (2)(b) (LexisNexis

Supp. 2021); *see also id.* § 76-10-1801(1)(c) (2017). In other words, Ayala contends that the court erred in convicting him of a third-degree felony because the evidence showed at most he benefitted less than $1,500 from the allegedly fraudulent insurance claims.

¶18 In the context of a bench trial, when a defendant contends the evidence was insufficient to support a conviction, we review the court's findings for clear error. *State v. Briggs*, 2008 UT 75, ¶ 10, 197 P.3d 628. And "even if evidence is insufficient, we will not find plain error unless the insufficiency was obvious and fundamental." *State v. Prater*, 2017 UT 13, ¶ 28, 392 P.3d 398 (cleaned up). "While it is difficult for the court on appeal to dictate when an evidentiary defect was apparent to the trial court, there is a certain point at which an evidentiary insufficiency is so obvious and fundamental that it would be plain error for the trial court not to discharge the defendant." *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346.

¶19 We conclude that the court did not commit error, because there was evidence sufficient to show that Ayala received nearly $2,000 in insurance benefits in connection with his fraudulent insurance claim. Specifically, defense exhibit 5 (which Ayala produced at trial) included six claim forms for chiropractic treatments received from April 20 to May 18, 2012, in connection with the April 2012 accident and claim.[4] Exhibit 5 showed that Ayala's chiropractor billed Ayala's insurer for $368.50, $277.80, $387.10, $387.10, $189.10, and $387.10—a total of $1,996.70. Accordingly, we conclude there is sufficient evidence to support Ayala's third-degree-felony conviction.

---

4. Ayala introduced this exhibit at trial in an attempt to show that these treatments were related to actual injuries sustained in the April 2012 accident, an argument the trial court rejected.

II. Rule 23B Remand

¶20 Next, Ayala contends that he received ineffective assistance because Counsel did not call an expert witness on Spanish-to-English interpretation to challenge the accuracy of the interpretation at Ayala's interview.

¶21 To establish ineffective assistance of counsel, Ayala "must show that (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense." *See State v. Wright*, 2021 UT App 7, ¶ 52, 481 P.3d 479 (cleaned up). "Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address [Ayala's] claims under either prong." *See Honie v. State*, 2014 UT 19, ¶ 31, 342 P.3d 182.

¶22 Here, because we conclude that Ayala's defense was not prejudiced by Counsel's alleged deficient performance, we limit our analysis to the second prong. "Counsel's performance is prejudicial if the defendant can demonstrate that there is a reasonable probability that the outcome of his or her case would have been different absent counsel's error. Accordingly, the defendant must do more than simply show that the errors had some conceivable effect on the outcome of the proceeding." *Wright*, 2021 UT App 7, ¶ 54 (cleaned up).

¶23 On rule 23B remand, the trial court found that Counsel was familiar with the facts of the case and was confident in his ability to cross-examine Interpreter on his own, and thus he would not need to hire an expert. The trial court found that Counsel did in fact cross-examine Interpreter about the very deficiencies identified by the expert interpreters. Specifically, the trial court found (1) that even though the testimony Counsel elicited from Interpreter was "not as technical and detailed" as the testimonies provided by the experts, it was nevertheless

"comparable" and (2) that the testimony Counsel elicited from Interpreter "mirror[ed]" the deficiencies identified by the two experts. In other words, Counsel's cross-examination of Interpreter elicited the same information about the problematic aspects of the interpretation as would have been offered by the two experts. Thus, it is clear to us that the testimonies of the experts about the quality of interpretation—had they been included at trial—would not have had an impact on the proceeding's outcome for the simple reason that their testimonies would have added nothing substantive to the testimony about the interpretation deficiencies Counsel elicited on his own.

¶24 Moreover, the problems with the interpretation (as identified by the experts and revealed during Counsel's cross-examination of Interpreter) did not materially change the weight of Ayala's admissions. None of the alleged relevant errors or technical defects in the interpretation shows that Ayala misunderstood the questions asked of him such that they caused him to mistakenly admit that he sought medical attention even though he was not injured. As the trial court found on remand, "many of the objections to the quality of [the] interpretation were more technical than practical," the interpretation was not "misunderstood by [Ayala] to any substantial degree," and Ayala's "responses during the insurance investigation were [not] so misperceived and misstated as to obscure their essential meaning." For example, that a synonym was used for "treatment" or "injury" or "right" does not change the overall gist of Ayala's statements that he sought chiropractic care because he thought he had benefits coming to him under his insurance policy even though he had not actually sustained physical harm. So although it may be true that the interpretation was inelegant in that it suffered from certain deficiencies and a lack of nuance, any problems with it were not so profound as to "undermine[] our confidence in the proceeding's outcome." *See State v. Mendoza*, 2021 UT App 79, ¶ 18, 496 P.3d 275. Thus, we

conclude that the expert interpreters' testimonies do nothing to change the conclusion that Ayala understood the essential meaning of the questions he was asked by the insurance investigator.

¶25   Our confidence in the verdict is not undermined, because we conclude that there is not a reasonable probability that the outcome of the case would have been different had the interpretation experts testified during trial. Accordingly, Ayala's ineffective assistance claim fails.

CONCLUSION

¶26   The court did not err in convicting Ayala of felony insurance fraud, because sufficient evidence was presented at trial that Ayala received more than $1,500 in insurance benefits in connection with the fraudulent claim related to that count. Further, Ayala's claim of ineffective assistance is unavailing because any errors in the interpretation did not have a substantive impact such that they undermine confidence about whether the same verdict would have resulted.

¶27   Affirmed.

_____