2025 UT App 66

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DEAN MARSHALL SPENCER,
Appellant.

Opinion
No. 20230863-CA
Filed May 8, 2025

Fourth District Court, American Fork Department
The Honorable Denise Porter
No. 191101244

Jennifer L. Foresta, Attorney for Appellant

Derek E. Brown and Alexandra Herlong,
Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

OLIVER, Judge:

¶1     During a traffic stop, a Utah County Sheriff's deputy (Deputy) smelled a strong odor of alcohol coming from Dean Marshall Spencer's vehicle. Deputy arrested Spencer after finding open containers of alcohol in Spencer's vehicle and observing signs of impairment. When results from a blood draw indicated his blood alcohol concentration was above the legal limit, Spencer was charged with driving under the influence of alcohol (DUI). Spencer had an independent laboratory retest his blood sample before trial, and the laboratory results placed Spencer's blood alcohol concentration below the legal limit. Despite presenting the results of the independent laboratory test at his bench trial, Spencer was convicted of DUI. Spencer appeals, asserting there

was insufficient evidence to prove beyond a reasonable doubt that he was guilty of DUI. Because Spencer has not met his burden on appeal of demonstrating there was insufficient evidence to support his conviction for DUI, we affirm.

BACKGROUND[1]

*The Traffic Stop*

¶2     While driving one morning in August 2018, Spencer made a right-hand turn when he had a red light at an intersection that had a posted sign prohibiting right turns when the traffic light was red. Deputy observed Spencer make the turn and initiated a traffic stop of Spencer's vehicle. Spencer pulled over, and Deputy approached the passenger side of Spencer's vehicle. When Spencer rolled down the window, Deputy smelled a strong order of alcohol coming from the interior. Deputy then asked Spencer "if he had been drinking [or] had any open containers in the vehicle," and in response Spencer shrugged his shoulders. Deputy informed Spencer that he believed "there was an open container or freshly spilled alcohol in the car" because the alcohol odor was so strong. Deputy also noticed that Spencer's eyelids appeared to be droopy. After Deputy again asked Spencer if there was an open container of alcohol in the vehicle and told Spencer he had "probable cause to search the vehicle," Spencer responded, "Well, you'll have to search." Deputy then asked Spencer to exit the vehicle and walk to the back of the car. Spencer complied.

¶3     When Deputy asked Spencer to move to the front of the vehicle so Deputy could "keep an eye on him" and search the vehicle, Spencer refused, so Deputy detained him in his patrol

---

1. "On appeal from a bench trial, we view the evidence in the light most favorable to the district court's findings." *State v. Jok*, 2021 UT 35, ¶ 3 n.3, 493 P.3d 665.

vehicle. Deputy then searched Spencer's vehicle and found an open beer can and a large drink mug that smelled of alcohol, which Deputy believed contained a mixture of alcohol and soda. Deputy also found several empty beer cans and a half-empty bottle of vodka in the trunk of Spencer's car.

¶4     After searching the vehicle, Deputy went to his patrol car, informed Spencer of what he found, and "requested that he submit to field sobriety tests." Spencer did not respond to Deputy's request. Deputy then arrested Spencer because he believed he "was impaired" and "not capable of safely driving a motor vehicle." Deputy transported Spencer to the Utah County Jail.

¶5     At the jail, Deputy asked Spencer to submit to a blood draw, but Spencer did not respond to his request, so Deputy requested a warrant for the blood draw. The warrant was approved, and Spencer's blood was drawn shortly after. The blood sample was sent to the Utah Public Health Laboratories (the State Lab). A toxicologist (State Toxicologist) at the State Lab analyzed the blood on August 23, 2018, and got two results: .08479 and .08437 grams of ethanol per 100 milliliters of blood. The State Lab's accreditation required that formal results of blood alcohol tests be reported to the hundredths place without rounding, so State Toxicologist formally reported a result of .08 grams of ethanol per 100 milliliters of blood.

¶6     Spencer had his blood sent to an accredited forensic laboratory in Colorado (the Colorado Lab), which tested the blood in February 2020. The Colorado Lab's test produced results of .079 grams of ethanol per 100 milliliters of blood.

*The Charges and Bench Trial*

¶7     Spencer was later charged with DUI with prior convictions, a third-degree felony, and an open container in a vehicle, a class

C misdemeanor.[2] After many delays due to the COVID-19 pandemic, Spencer's case proceeded to a bench trial in August 2023.

¶8    The State called two witnesses, Deputy and State Toxicologist, during its case in chief. Deputy testified about the traffic stop and subsequent arrest of Spencer as described above. State Toxicologist testified to the results of the test of Spencer's blood sample as described above. The final toxicology report from the State Lab was admitted as an exhibit. State Toxicologist also testified that for blood alcohol tests like the one she administered on Spencer's blood sample, there is typically a variation of plus or minus 5% between different results.

¶9    Spencer called the Colorado Lab's owner and acting director (Director) in his case in chief. Director testified about the results of the blood test as described above. Director also testified that there is not a statistically significant difference between results of .079 and .08 grams of ethanol per 100 milliliters of blood. Spencer also had the report of the blood test done by the Colorado Lab admitted as an exhibit. When asked if the Colorado Lab's result confirmed the result of the State Lab, Director testified that it confirmed the State's test result "within their measurement [of] uncertainty."

¶10    During closing arguments, the State argued that Spencer was guilty of a per se DUI because of the State Lab blood alcohol result of .08, and because Director testified that the difference

---

2. Because the traffic stop and subsequent arrest occurred in August 2018 before the lower threshold for intoxication went into effect on December 30, 2018, *see* Act of Mar. 8, 2017, ch. 283, § 3, 2017 Utah Laws 1342, 1343, .08 grams of ethanol per 100 milliliters of blood is the applicable intoxication threshold for a per se DUI in this case.

between the results of the State Lab and Colorado Lab tests were statistically identical.

¶11    Defense counsel argued the State did not prove beyond a reasonable doubt that Spencer's blood alcohol concentration was .08 or above because two tests were performed on the same blood sample, and one produced a result above the legal limit and one below. Defense counsel also argued that because the State did not present any evidence that Spencer had prior convictions, even if the court did find beyond a reasonable doubt that Spencer's blood alcohol concentration was .08, the court could convict only on a class B misdemeanor rather than a third-degree felony.

¶12    The district court, agreeing with Spencer's argument regarding prior convictions, found Spencer guilty of DUI, a class B misdemeanor, and having an open container in a vehicle, a class C misdemeanor.[3] The district court found Spencer guilty of DUI because the two experts agreed that the difference between the test results was not statistically significant, and confirmed the State Lab's result of .08, which was sufficient to convict Spencer of a per se DUI. The district court further stated that "no test is 100 percent perfect," and that it "can only act on what the Legislature tells [it] to act on, which is that . . . a .08 . . . [is] in fact at that per se DUI level." Spencer was sentenced to 180 days in jail with all but two days suspended and given two days credit for time served, issued a $1,460 suspended fine for the DUI conviction, and issued a $100 fine for the open container conviction.

## ISSUE AND STANDARD OF REVIEW

¶13    On appeal, Spencer asserts that there was insufficient evidence to prove beyond a reasonable doubt that he was guilty

---

3. Spencer is not challenging the open container conviction on appeal.

of a per se DUI. A "claim of insufficient evidence at a bench trial" is reviewed "for clear error." *State v. Ayala*, 2022 UT App 1, ¶ 15, 504 P.3d 755.

ANALYSIS

¶14    "When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if we otherwise reach a definite and firm conviction that a mistake has been made." *State v. Ayala*, 2022 UT App 1, ¶ 15, 504 P.3d 755 (cleaned up). "An example of an obvious and fundamental insufficiency is the case in which the State presents no evidence to support an essential element of a criminal charge." *State v. Schroeder*, 2023 UT App 57, ¶ 17, 531 P.3d 757 (cleaned up).

¶15    For Spencer to be convicted of a per se DUI, the State must prove beyond a reasonable doubt that Spencer "operate[d] or [was] in actual physical control of a vehicle" and "that a subsequent chemical test show[ed] that [Spencer] ha[d] a blood or breath alcohol concentration of .08 grams or greater at the time of the test." Utah Code § 41-6a-502 (2018). The State presented sufficient evidence to support these required elements.[4]

¶16    In the State's case in chief, State Toxicologist testified that Spencer's blood alcohol concentration at the time of the test was .08 grams per 100 milliliters of blood. The State Lab's final toxicology report that reported Spencer's blood alcohol concentration as .08 was admitted as an exhibit. Even though Spencer presented evidence through the testimony of Director and the admission of exhibits that showed that the Colorado Lab's test produced a result of .079, Spencer did not introduce any

---

4. Spencer does not dispute that he operated or was in actual physical control of a vehicle at the time of the traffic stop.

evidence that invalidated the test results presented by the State. In fact, Spencer's expert, Director, testified that the difference between the two test results was not statistically significant. And because Spencer did not undermine or invalidate the results of the State Lab's test, the factfinder was presented with two valid tests to consider and weigh in deciding if Spencer was guilty of a per se DUI.

¶17    It is widely accepted that "weighing the evidence" and choosing "between conflicting evidence" is exclusively the role of the factfinder. *State v. Lyden*, 2020 UT App 66, ¶ 14, 464 P.3d 1155. And appellate courts are "not normally in the business of reassessing or reweighing evidence." *State v. Prater*, 2017 UT 13, ¶ 32, 392 P.3d 398. Therefore, because it is the factfinder's responsibility to determine "which evidence to believe when conflicting evidence is presented," merely identifying inconsistent or contradictory evidence that was presented "is generally not sufficient to overturn a verdict." *Layton City v. Carr*, 2014 UT App 227, ¶ 10, 336 P.3d 587.

¶18    The State presented evidence that Spencer had a blood alcohol concentration of .08 and that he operated a vehicle, thus satisfying all the elements required to convict Spencer of a per se DUI. And while Spencer presented evidence that provided a different result than the State Lab's test, this evidence did not invalidate the State's evidence that his blood alcohol concentration was .08. Instead, Spencer's expert testified that the Colorado Lab's results confirmed the State Lab's results "within their measurement [of] uncertainty" and that there was not a statistically significant difference between the two test results.

¶19    Thus, the district court was presented with two valid but conflicting blood tests, one that placed Spencer's blood alcohol concentration above the legal limit and one that placed it just below. Both test results could fairly be considered by the factfinder, who was responsible for weighing and assessing the

conflicting evidence. *See State v. Wall*, 2020 UT App 36, ¶ 57, 460 P.3d 1058 (holding that when two experts come to "different conclusions from [the] same evidence, the weight to be given to such conflicting expert opinions is solely the province of the [factfinder]"). The district court considered both test results and accepted the result of the State Lab's test.

¶20    Here, "we cannot conclude that reasonable minds must have entertained a reasonable doubt about the essential elements of the" per se DUI charge. *State v. Plexico*, 2016 UT App 118, ¶ 18, 376 P.3d 1080 (cleaned up). Given that Spencer's own expert confirmed that the Colorado Lab's result of .079 was not a statistically significant difference from the State Lab's result of .08 and was "within the [State Lab's] measurement [of] uncertainty," Spencer has failed to meet his burden of demonstrating that the district court's decision was against the clear weight of the evidence. Thus, we are not persuaded that any mistake was made.


CONCLUSION

¶21    Sufficient evidence supported the district court's finding that Spencer's blood alcohol concentration was .08, and that he was therefore guilty of a per se DUI. Accordingly, we affirm Spencer's conviction.

———————