2023 UT App 57

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MICHAEL SCHROEDER,
Appellant.

Opinion
No. 20190339-CA[1]
Filed May 25, 2023

Fifth District Court, Cedar City Department
The Honorable Troy A. Little
No. 191500104

Trevor J. Lee, Attorney for Appellant

Shane Klenk, Attorney for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGE MICHELE M. CHRISTIANSEN FORSTER and
SENIOR JUDGE KATE APPLEBY concurred.[2]

ORME, Judge:

¶1     Following a consolidated bench trial, the court found
Michael Schroeder guilty on three charges of protective order
violations and one charge of criminal stalking, all class A
misdemeanors. Schroeder now appeals, primarily contending
that there was insufficient evidence to establish his guilt

---

1. This case is the consolidated appeal of cases 20190339-CA,
20190507-CA, and 20190508-CA.

2. Senior Judge Kate Appleby sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

beyond a reasonable doubt on the convictions still at issue in this appeal.[3]

¶2    We conclude that Schroeder's convictions for violations of a protective order are supported by sufficient evidence and affirm those convictions. But we conclude that Schroeder's conviction for stalking is against the clear weight of the evidence developed at trial in support of that charge and therefore reverse that conviction.

## BACKGROUND[4]

¶3    After Michael Schroeder and Samantha[5] ended their romantic relationship in 2018, Samantha sought a protective order against Schroeder. On August 13, 2018, Utah's Fifth District Court

---

3. During the pendency of this appeal, Schroeder filed a motion for remand under rule 23B of the Utah Rules of Appellate Procedure on a claim of ineffective assistance of counsel he asserted in connection with his conviction for a protective order violation that was alleged to have occurred on January 26, 2019. We granted that motion. In March 2022, following a hearing on Schroeder's rule 23B motion, the trial court granted the parties' Stipulated Motion to Dismiss Charge with Prejudice. By so doing, the court dismissed the case concerning Schroeder's January 26 protective order violation. For that reason, we do not discuss the events surrounding that charge, which is no longer at issue in this appeal.

4. Following a bench trial, "we recite the facts from the record in the light most favorable to the findings of the trial court and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Cowlishaw*, 2017 UT App 181, ¶ 2, 405 P.3d 885 (quotation simplified).

5. A pseudonym.

held a protective order hearing. Because Schroeder was present and because he did not object to the protective order becoming permanent, the court signed and served the Protective Order, which required Schroeder to refrain from contacting Samantha, to stay at least 1,000 feet from her, and to stay away from her home.

*September 23 Protective Order Charge*

¶4    During the bench trial, Samantha, her friend, a police officer, and Schroeder each testified about an event that took place on September 23, 2018. Schroeder testified that on that day, he drove his truck through the city where he and Samantha lived and inadvertently turned onto Samantha's street. After turning onto the street, he suddenly recognized where he was and further realized that if he maintained his course, he would ultimately pass Samantha's home. He also recognized that driving past her home may violate the Protective Order, but he was not certain. Although he contemplated turning around to avoid passing Samantha's home, he testified that he chose to continue driving down her street.

¶5    When Schroeder approached Samantha's home, Samantha was sitting outside with a friend. She and her friend testified that they saw the truck approaching and recognized the truck as belonging to Schroeder. Samantha testified that she saw the truck slow down to almost a stop in front of her home. She was able to identify Schroeder as the driver of the truck through the truck's open window. Samantha further testified that Schroeder stared at her and made "complete eye contact" with her before driving off. Samantha estimated that she was "maybe 20 feet" from where Schroeder drove past. Her friend testified that he too had been able to identify Schroeder through the truck's open window. The friend further corroborated Samantha's testimony that when Schroeder passed Samantha's home, he was "maybe 20" or "25 feet" from their position and that Schroeder had slowed down to a stop and stared at them for "a few seconds" before driving off.

¶6     Samantha called the police and reported what had happened. An officer arrived and spoke with Samantha and her friend, then contacted Schroeder and met with him at his residence. Schroeder explained that he had made a wrong turn onto Samantha's street, thought about turning around, made the decision not to, and then proceeded to drive past Samantha's home. Schroeder also told the officer that he did not know the conditions of the Protective Order.

¶7     Soon after this event, the State filed an Information and Affidavit of Probable Cause against Schroeder, charging him with a protective order violation for coming within 1,000 feet of Samantha.

*January 7 Protective Order Violation Charge and Stalking Charge*

¶8     During the bench trial, Samantha and Schroeder also testified regarding an event that took place on the morning of January 7, 2019. Samantha testified that she was with her dog in front of her home when she heard a diesel truck approaching the cross street at the end of the block, three houses away. The distinctive sound of a diesel engine caused her to look up, and she saw Schroeder's truck slowly driving by on the cross street. Samantha recounted that she made eye contact with Schroeder and shook her head at him before he drove off. When she went back inside her home, she again called the police and reported what happened. Samantha stated that she is "really . . . not good" with estimating distances, but she estimated she was "maybe 35 feet" from where she saw Schroeder. Schroeder denied having any knowledge of this incident and suggested that Samantha might have seen "some other gray truck" and confused it with his truck.

¶9     Following this incident, the State filed an Information and Probable Cause Statement against Schroeder, charging him with a violation of the Protective Order's prohibition on coming within 1,000 feet of Samantha and also charging him with criminal stalking. The State predicated the stalking charge on events

specified in the charging documents, discussed in more detail below.

*Consolidated Trial*

¶10    All cases and charges addressed in this appeal came before the trial court in a consolidated bench trial on April 4, 2019. In its case addressing the September 23 protective order violation, the State called Samantha, her friend, and the officer as witnesses. They testified as outlined above, and Schroeder testified in his defense but did not call other witnesses or present any other evidence. Following the trial, the court expressly found all the State's witnesses to be credible. The court found that Schroeder had been properly served the Protective Order because he was present when the Protective Order was issued and did not object to its issuance. The court further found that because Schroeder recognized that he was driving down Samantha's street and chose not to alter his course, he intentionally violated the Protective Order. Based on those findings, the trial court found Schroeder guilty of the protective order violation that occurred on September 23, 2018.

¶11    With respect to the January 7 protective order violation, the court found that the State presented sufficient evidence that Schroeder drove by on the adjacent street—which it found to be less than 1,000 feet away from Samantha—and that, while passing, Schroeder slowed down enough to stare at Samantha and for Samantha to identify him and shake her head at him. The court acknowledged that if Schroeder had just driven down the adjacent street and neither slowed down nor stared at Samantha, this likely would have been insufficient to support a protective order violation. But because he was driving down a street close to where he knew Samantha's home to be and had slowed and stared at her while he passed, his actions were sufficient to amount to a violation of the Protective Order.

¶12    Regarding the stalking charge, the State specified the following three events in the Probable Cause Statement as the

basis for the charge: (1) an alleged incident on January 6, 2019, at a local smoke shop; (2) the January 7 protective order violation; and (3) an alleged drive-by incident that occurred a few hours after the January 7 protective order violation. At trial, while the State presented evidence of the January 7 protective order violation, the State did not present any evidence of the other two events specified in the charging documents.

¶13    After both parties rested and presented closing arguments, the court determined that the September 23 and January 7 acts "were clearly course of conduct acts" that could and did cause Samantha "emotional distress and fear." Thus, contrary to the State's theory set out in the charging documents and not developed at trial, the court combined the September 23 and January 7 episodes to establish the proscribed course of conduct under the stalking statute.

¶14    Schroeder was convicted on all counts. This appeal followed.

ISSUE AND STANDARD OF REVIEW

¶15    Schroeder argues that there was insufficient evidence to prove his guilt beyond a reasonable doubt. "Unlike challenges to a jury verdict, a defendant need not file a separate motion or make a separate objection to challenge the sufficiency of the evidence supporting the court's factual findings in a bench trial." *State v. Holland*, 2018 UT App 203, ¶ 9, 437 P.3d 501, *cert. denied*, 437 P.3d 1252 (Utah 2019). "[W]e review a claim of insufficient evidence at a bench trial for clear error," *State v. Ayala*, 2022 UT App 1, ¶ 15, 504 P.3d 755, meaning we "must sustain the district court's judgment unless it is against the clear weight of the evidence, or if we otherwise reach a definite and firm conviction that a mistake has been made," *Holland*, 2018 UT App 203, ¶ 9 (quotation simplified). In other words, "before we can uphold a conviction it must be supported by a quantum of evidence concerning each element of the crime *as charged* from which the factfinder may base

its conclusion of guilt beyond a reasonable doubt." *Spanish Fork City v. Bryan*, 1999 UT App 61, ¶ 5, 975 P.2d 501 (emphasis added) (quotation otherwise simplified).

ANALYSIS

I. Protective Order Violations

¶16     Schroeder asks us to conclude that the trial court erred in finding him guilty of the September 23, 2018 and the January 7, 2019 protective order violations. He contends that there was insufficient evidence from which the court could find him guilty beyond a reasonable doubt. *See generally State v. Austin*, 2007 UT 55, ¶ 6, 165 P.3d 1191. We address each of the court's rulings in turn.

A.     September 23 Protective Order Violation

¶17     Schroeder contends that the State did not produce sufficient evidence regarding Schroeder's mental state when he drove past Samantha and her friend in front of Samantha's home. As outlined by our Supreme Court, "when reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if we otherwise reach a definite and firm conviction that a mistake has been made." *State v. Gordon*, 2004 UT 2, ¶ 5, 84 P.3d 1167 (quotation simplified). "An example of an obvious and fundamental insufficiency is the case in which the State presents no evidence to support an essential element of a criminal charge." *State v. Prater*, 2017 UT 13, ¶ 28, 392 P.3d 398 (quotation simplified).

¶18     It is a violation of a protective order and "a class A misdemeanor," Utah Code Ann. § 76-5-108(3) (LexisNexis Supp. 2022), when a defendant "intentionally or knowingly violates [an] order after having been properly served or having been present, in person or through court video conferencing, when the order

was issued," *id.* § 76-5-108(2)(b). Schroeder concedes that he was properly served with the Protective Order on August 13, 2018, and was aware of its existence. Therefore, what remains for us to decide is whether the State adduced sufficient evidence that Schroeder was aware of the Protective Order and that he "intentionally or knowingly" violated it. *See id.* In reviewing the sufficiency of the evidence, we are mindful that "credibility is an issue for the trier of fact." *Zappe v. Bullock*, 2014 UT App 250, ¶ 8, 338 P.3d 242 (quotation simplified).

¶19 At trial, Schroeder conceded that he intentionally drove his truck past Samantha's home after deciding not to turn around so as to avoid doing so. He recounted, "As soon as I turned on the road and realized what was going on, like I was going to flip around and then just kept on going through." He also acknowledged that he came within 1,000 feet of Samantha's home. Accordingly, we conclude that there was sufficient evidence to support the conviction. We further conclude that the trial court's findings were not against the clear weight of the evidence and affirm Schroeder's conviction regarding the September 23 protective order violation.

B. January 7 Protective Order Violation

¶20 Schroeder next contends that the State did not provide sufficient evidence on which the trial court could determine, beyond a reasonable doubt, that he slowed down and stared at Samantha as he drove by on the cross street three houses away from her home.

¶21 At trial, the court appropriately recognized that simply driving down a cross street near Samantha's home would "not necessarily be a violation" of the Protective Order. But the court found that Schroeder did not simply drive down the cross street, minding his own business. Instead, based on Samantha's testimony, which the court found to be credible, the court found that Schroeder slowed and stared at Samantha as he drove past. Samantha's testimony included her estimation, apparently found

reasonable by the trial court, that she was less than 1,000 feet from the cross street when Schroeder slowed and stared at her.

¶22 Therefore, there was sufficient evidence to support the conviction, and the trial court's findings were not against the clear weight of the evidence. Accordingly, we also affirm Schroeder's conviction regarding the January 7 protective order violation.

## II. Stalking Conviction

¶23 Schroeder contends that the evidence supporting his stalking conviction was insufficient to establish the necessary course of conduct as charged by the State and that his conviction was therefore against the clear weight of the evidence.[6] We agree.

¶24 "Article I, section 12 of the Utah Constitution provides that every criminal defendant has a right to know 'the nature and cause of the accusation.'" *State v. Burnett*, 712 P.2d 260, 262 (Utah 1985) (quoting Utah Const. art. I, § 12). "This entitles the accused to be charged with a specific crime, so that he can know the particulars of the alleged wrongful conduct and can adequately prepare his defense." *Id.* Additionally, rule 4 of the Utah Rules of Criminal Procedure provides that "[a] prosecution may be

---

6. As previously noted, "a defendant need not file a separate motion or make a separate objection to challenge the sufficiency of the evidence supporting the court's factual findings in a bench trial." *State v. Holland*, 2018 UT App 203, ¶ 9, 437 P.3d 501, *cert. denied*, 437 P.3d 1252 (Utah 2019). When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised on appeal regardless of whether the party raising the question has made an objection to such findings via a motion or otherwise. *See State v. Jok*, 2021 UT 35, ¶ 18, 493 P.3d 665 (noting that "a sufficiency of the evidence claim is effectively preserved by the nature of a bench trial and does not require making a specific motion").

commenced by filing an information," Utah R. Crim. P. 4(a), which must contain "the name given to the offense by statute or ordinance, or stating in concise terms the definition of the offense sufficient to give the defendant notice of the charge," *id.* R. 4(b)(2). And an information charging a felony or a class A misdemeanor must include "a statement of facts sufficient to support probable cause for the charged offense or offenses." *Id.* R. 4(c)(1). Our Supreme Court has stated that "in a criminal proceeding . . . [the accused] is entitled to be charged with a specific crime so that he may know the nature and cause of the accusation against him" and that "the State must prove substantially as charged the offense it relies upon for conviction." *State v. Taylor*, 378 P.2d 352, 353 (Utah 1963) (quotation simplified). This did not happen here with respect to the stalking charge.

¶25    The charging documents concerning the stalking charge alleged, in contemplation of section 76-5-106.5(2) of the Utah Code, as follows:

> [Schroeder], on or about January 07, 2019, in Iron County, State of Utah, did (a) intentionally or knowingly engage in a course of conduct directed at [Samantha] and knew or should have known that the course of conduct would cause a reasonable person: (i) to fear for the person's own safety or the safety of a third person; or (ii) to suffer other emotional distress[.]

¶26    Under section 76-5-106.5(2), an actor commits the offense of stalking when the actor "intentionally or knowingly . . . engages in a course of conduct" that "would cause a reasonable person . . . to fear for the individual's safety" or "to suffer other emotional distress." Utah Code Ann. § 76-5-106.5(2) (LexisNexis Supp. 2022). The statute also explains that a course of conduct comprises "two or more acts directed at or toward a specific individual," *id.* § 76-5-106.5(1)(a)(i), and further defines emotional distress as "significant mental or psychological suffering, whether or not

medical or other professional treatment or counseling is required," *id.* § 76-5-106.5(1)(a)(ii)(A).

¶27 The Probable Cause Statement indicated that the stalking charge in this case was based on a course of conduct consisting of an event occurring "[o]n or about January 6, 2019," an event occurring the "following morning on January 7, 2019, between 8:00 a.m. and 9:00 a.m.," and an event occurring "[l]ater that morning" on January 7, 2019. The charging documents concerning the stalking offense made no mention of the September 23 incident.

¶28 At trial, the State presented evidence only of the January 7 event. The State did not present any evidence addressing either of the other two events specified in the charging documents as establishing the requisite course of conduct for stalking. Accordingly, Schroeder had no reason to introduce controverting evidence when presenting his defense.

¶29 Following closing arguments, the trial court made findings of fact and entered its ruling. The court found Schroeder guilty of stalking based on its finding that the January 7 protective order violation and the September 23 protective order violation "were clearly course of conduct acts."

¶30 Schroeder does not challenge the court's finding that the January 7 protective order violation, included in the charging documents, could be a qualifying act to partially establish a stalking course of conduct. And the State presented sufficient evidence of its occurrence at trial. *See supra* Part I.B. But the State did not produce evidence concerning the other two incidents referred to in the Probable Cause Statement, and it never argued that the September 23 incident was relevant to the stalking charge, nor did it seek to amend the charging documents to incorporate that theory. Thus, by the end of trial, the State had established only one of the two or more incidents required to prove the stalking offense it charged. Because evidence is necessarily insufficient when the State fails to establish "an essential element

of a criminal charge," *State v. Ayala*, 2022 UT App 1, ¶ 15, 504 P.3d 755 (quotation simplified), we reverse Schroeder's conviction for stalking.[7]

CONCLUSION

¶31 The trial court's judgments were not against the clear weight of the evidence regarding Schroeder's two convictions for the protective order violations. Therefore, we affirm Schroeder's convictions regarding the September 23 protective order violation and the January 7 protective order violation. But because the State did not present evidence of any act specified in the relevant charging documents as constituting stalking, apart from the January 7 protective order violation, and because stalking is predicated on a course of conduct comprising two or more acts, the evidence was necessarily insufficient. Therefore, Schroeder's stalking conviction was against the clear weight of the evidence, and we reverse that conviction.

---

7. Schroeder additionally argues that the trial court's sua sponte reconstruction of the stalking charge, following trial, in which it embraced a theory of stalking not charged, was at odds with the variance doctrine. The variance doctrine prevents the State from introducing evidence at trial that varies from the charging documents where the variance would prejudice a defendant's case. *See State v. Fulton*, 742 P.2d 1208, 1215 (Utah 1987). While we premise our affirmance on the more straightforward rationale that there was insufficient evidence to establish the stalking offense as charged by the State, we recognize that our reversal of that conviction also advances the salutary purposes served by the variance doctrine.