**2024 UT App 59**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TRUE SPARLING,
Appellant.

Opinion
No. 20220390-CA
Filed April 18, 2024

Seventh District Court, Monticello Department
The Honorable Don M. Torgerson
No. 201700244

K. Andrew Fitzgerald, Attorney for Appellant

Sean D. Reyes and Lindsey Wheeler,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and JOHN D. LUTHY concurred.

HARRIS, Judge:

¶1      During a traffic stop, law enforcement officers discovered a large "rock" of methamphetamine in a car that True Sparling had been driving. The State later charged Sparling with various drug and traffic offenses. After a bench trial, the district court acquitted Sparling of two of the three drug-related charges but convicted him of possessing the methamphetamine. Sparling now appeals that conviction, asserting that insufficient evidence existed to support it. We disagree and therefore affirm.

## BACKGROUND[1]

¶2 One night, two police officers on patrol on Main Street in Monticello, Utah, passed a "small black car" with mismatched headlights. One of the officers (Officer 1) noticed that the car "did not have a license plate." The officers followed the car, watching as it made a right turn followed by an immediate left, then entered a parking lot only to quickly exit the lot and pull back onto Main Street. Officer 1 found this driving pattern to be "suspicious" and had the impression that the car was "trying to avoid" the officers. The officers also observed that one of the car's brake lights was out. Eventually, they decided to initiate a traffic stop.

¶3 At the traffic stop, the officers found two individuals in the car. The driver identified himself as Sparling and told the officers that he and his passenger (Friend) were coming from Salt Lake City, where Sparling had just purchased the car, and that they were headed home to Blanding, Utah. When Officer 1 asked Sparling for his driver license, Sparling said he had lost it; he also advised Officer 1 that there was a warrant out for his arrest.

¶4 After checking on both Sparling and Friend in the law enforcement database, Officer 1 learned that Sparling's driver license was suspended and that Friend's was expired. Given that no one in Sparling's vehicle was licensed to drive it, Officer 1 made the decision to impound it, and he instructed Sparling and Friend to get out of the vehicle.

¶5 While the officers were preparing to inventory the vehicle, Friend asked them if she could have "a cigarette and her purse." The other officer (Officer 2) then retrieved Friend's purse, which

---

1. "On appeal from a bench trial, we view and recite the evidence in the light most favorable to the trial court's findings; we present additional evidence only as necessary to understand the issues on appeal." *Bountiful City v. Sisch*, 2023 UT App 141, n.1, 540 P.3d 1164 (quotation simplified).

was "still on the passenger's seat," and took a look inside. In the purse, Officer 2 found a crystallized "pink rock" that Officer 1 "immediately" identified as methamphetamine; in fact, Officer 1 later described it as the "largest methamphetamine rock" he had ever seen during his eleven years of working in law enforcement. Also in Friend's purse, Officer 2 found "a black tar substance," some "marijuana flake," and a "glass pipe," as well as Sparling's driver license, which had been "broken in half." A few minutes later, when the officers searched the vehicle's glove box, they located more "marijuana flake" and "a THC vape pen."

¶6     At that point, the officers informed Sparling and Friend that they were being "detained for suspicion of possession of narcotics." The officers then seized Friend's cell phone and conducted field tests on the substances; the rock tested positive for methamphetamine, and the black tar substance tested positive for heroin. When the officers questioned Sparling, he denied any knowledge of the drugs, stating that they did not belong to him, and he claimed that the last time he used drugs had been either "days" or "weeks" earlier.

¶7     Friend, on the other hand, claimed full ownership of the substances, asserting that "they were hers and hers alone" and that Sparling "had no idea" she had them. Upon further questioning, however, Friend admitted that the previous day—while they had been in Salt Lake City—she and Sparling had "consumed" a portion of the drugs that Friend had purchased; in particular, she stated that Sparling had "smoked a bowl" with her. Seeking further clarification, Officer 1 then asked, "A bowl of what?," and Friend responded, "The meth" and "the pot." Later, in reaffirming the timeline of events, Officer 1 asked Friend again whether she was "sure" that Sparling "used with [her] yesterday," and Friend confirmed that he had. Indeed, at trial, Friend testified that the reason she had accompanied Sparling to Salt Lake City was so that she could "purchase some more drugs," something she did on a monthly basis, and that she had been

using Sparling's broken driver license as a tool to "chop up" the methamphetamine rock.

¶8 Later, the State charged Sparling with three counts of possession or use of a controlled substance—filed as third-degree felony charges because Sparling had prior drug convictions—for the methamphetamine and heroin found in Friend's purse and the THC found in the glove box.[2] The State also charged Sparling with one traffic-related misdemeanor count and two traffic infractions.

¶9 The case proceeded to a bench trial. In support of its case-in-chief, the State called Officer 1, Friend, a forensic scientist, and an individual who had performed a forensic download of Friend's phone. Sparling's primary defense to the drug charges was that the drugs belonged to Friend and not to him. The State's theory of the case was that Sparling had, at a minimum, "constructively possessed" the drugs.

¶10 To support its case, the State relied, in part, on text messages found on Friend's phone. Although the messages were all sent from or received on Friend's phone, some of the messages indicated that Sparling and Friend sometimes shared the device; some of the messages were apparently even written and sent by Sparling, who indicated his presence by typing "Hi this is true" at the beginning of such messages. One message from Friend, apparently sent to a potential customer, stated that "we can get some for you my guy said it's really good and same price," and "I can see if true can get that for you and you can pay him back when we get home." Another message, sent just a few hours before Sparling and Friend were detained at the traffic stop, asked a potential customer to "come to blanding cause true is really tired and plus we don't have scales to weigh so he said to come over."

---

2. Following the incident, Friend was charged in another case with possessing controlled substances and she later entered a guilty plea to some of those charges.

Officer 1 testified that a recipient of some of the messages was an individual known to law enforcement as a "user dealer supplier of narcotics"; one message to this recipient asked "how much" for "three." Some of the messages discussed "insurance money," with one such message stating, "I got my insurance money today so I'm all excited I'm like a kid on x-mas morning." Officer 1 testified that, based on his investigation, Sparling was the one who had received insurance money around that time, not Friend.

¶11    At the end of the trial, the court made an oral ruling acquitting Sparling of the heroin and marijuana possession charges but convicting him of the methamphetamine possession charge and all the traffic charges. With regard to the drug charges, the court noted that it was required "to find not just that [Sparling] knew that there were substances in the vehicle, [but] also that he intended to either possess or use or control those substances." The court relied on several pieces of evidence in concluding that Sparling had constructively possessed the methamphetamine. First, the court noted Sparling's "evasive driving pattern," which the court found "compelling" and indicative that Sparling knew there were drugs in the car. Next, the court noted that Sparling's broken driver license had been found in Friend's purse under the methamphetamine, which the court viewed as "one factor that matters" and that connected Sparling "directly to the methamphetamine." The court also relied on the fact that the methamphetamine had been found "within reach" of the driver's seat where Sparling had been sitting. In addition, the court relied on Friend's testimony, which it found credible; in particular, the court relied on Friend's account that part of the reason for their trip to Salt Lake City was so that she could buy methamphetamine, as well as her statement that Sparling had used some of that methamphetamine with her in Salt Lake City. Finally, the court discussed the text messages, which it found at least "slightly helpful" and which showed that Sparling had a role, with Friend, in attempting to sell the methamphetamine.

¶12    The court later sentenced Sparling to prison on the drug charge, but it suspended that sentence and placed Sparling on probation for thirty-six months.

### ISSUE AND STANDARD OF REVIEW

¶13    Sparling appeals his conviction on the drug possession charge, asserting that there was insufficient evidence to support it. "We review a claim of insufficient evidence at a bench trial for clear error, meaning we must sustain the district court's judgment unless it is against the clear weight of the evidence, or if we otherwise reach a definite and firm conviction that a mistake has been made." *State v. Schroeder*, 2023 UT App 57, ¶ 15, 531 P.3d 757 (quotation simplified). While this standard is "less deferential" than our review of a court's denial of a directed verdict motion after a jury trial, *see State v. Washington*, 2021 UT App 114, ¶ 8, 501 P.3d 1160, *cert. denied*, 509 P.3d 198 (Utah 2022), we nevertheless "accord deference to the [district] court's ability and opportunity to evaluate credibility and demeanor," and "we defer to its findings unless the record demonstrates clear error," *State v. Finlayson*, 2014 UT App 282, ¶ 32, 362 P.3d 926 (quotation simplified), *cert. denied*, 362 P.2d 926 (Utah 2015). A finding is against the clear weight of the evidence if it is "without adequate evidentiary support," and we will find that a mistake has been made "only if" the court's finding is "induced by an erroneous view of the law." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987) (quotation simplified).

### ANALYSIS

¶14    This appeal presents a single issue: whether the State presented sufficient evidence to support Sparling's conviction on the methamphetamine charge. The parties agree that this question turns on whether the State presented sufficient evidence to support the district court's finding that Sparling constructively

possessed the methamphetamine. In our view, the evidence presented at trial was sufficient to support the court's constructive possession finding.

¶15    "Constructive possession is a legal fiction whereby a person is deemed to possess contraband even when he or she does not actually have immediate physical control of the object." *State v. Gallegos*, 2020 UT App 162, ¶ 18 n.2, 479 P.3d 631 (quotation simplified), *cert. denied*, 496 P.3d 717 (Utah 2021). To prove constructive possession under Utah law, the State must show a "sufficient nexus between the accused and the contraband to permit an inference that the accused had both the power and the intent to exercise dominion and control over the contraband." *State v. Ashcraft*, 2015 UT 5, ¶ 19, 349 P.3d 664 (quotation simplified). This is a fact-specific inquiry, and the analysis is dependent on the attendant circumstances. *See id.* Our supreme court has identified several "relevant considerations" that may be considered by the factfinder in these situations, including the following: "ownership and/or occupancy of the residence or vehicle, presence of the defendant when the contraband is discovered, the defendant's proximity to the contraband, previous drug use by the defendant (if the contraband is drug-related), incriminating statements or behavior, and presence of contraband in a specific area where the defendant had control." *Id.* (quotation simplified); *see also State v. Anderton*, 668 P.2d 1258, 1264 (Utah 1983) (Durham, J., concurring majority) (stating that, among other factors, a court could consider "evidence indicating that the defendant was participating with others in the mutual use and enjoyment of the contraband" (quotation simplified)).

¶16    Here, the State presented several pieces of evidence that, taken together, supported an inference that Sparling "had both the power and the intent to exercise dominion and control over" the methamphetamine. *See Ashcraft*, 2015 UT 5, ¶ 19 (quotation simplified). First, Sparling drove Friend to Salt Lake City so that she could purchase methamphetamine to bring back to Blanding.

Second, after Friend purchased the methamphetamine in Salt Lake City, Sparling used some of it with her. Third, Sparling's suspended driver license had been broken in half and Friend was using it as a tool to cut the methamphetamine; the pieces of that license were found with the methamphetamine in Friend's purse.[3] Fourth, Sparling drove evasively once he encountered the officers in Monticello. Fifth, the methamphetamine was found inside Sparling's car and within his reach. Finally, Sparling sent text messages from Friend's phone indicating that he was an active participant in efforts to sell the methamphetamine to users back in Blanding. Given these facts, the district court's constructive possession finding was not against the clear weight of the evidence, and we perceive no clear error in its determination.

¶17 Sparling resists this conclusion on several grounds, none of which we find persuasive.

¶18 First, Sparling takes issue with the court's finding that the officers observed Sparling driving in an "evasive" manner, a fact the court found "compelling" and indicative that Sparling knew there were drugs in the car. According to Sparling, Officer 1 could not have witnessed Sparling "driving evasively" prior to Officer 1's decision to effectuate a traffic stop because "Sparling could not evade without there being a command to stop." But behavior can appropriately be considered "evasive" even when an officer has yet to give a command to stop or otherwise attempt to apprehend an individual. *See State v. Singleton*, 2005 UT App 464, ¶ 11, 128

---

3. In his reply brief, Sparling makes some effort to assert that Officer 2's search of Friend's purse was "unlawful." But because Sparling raised the lawfulness of the search for the first time in his reply brief, we do not address it here. *Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 ("It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court." (quotation simplified)).

P.3d 28 (finding that a defendant's behavior was "evasive," even though the officer had made no command to stop, where the defendant "merely turned and walked away from" said officer); *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (determining that probable cause existed where the defendant was "in an area of heavy narcotics trafficking" and his "unprovoked flight upon noticing the police" caused officers to become suspicious, noting that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"). The officers' observations of Sparling's "suspicious" driving pattern and their perception that he was driving evasively were therefore not contingent on whether they had activated their overhead lights or otherwise signaled Sparling to stop. And while we agree with Sparling that his evasive driving—by itself—likely would not support a finding of constructive possession, we see no error in the district court's decision to include this fact in its cumulative analysis of the relevant circumstances.

¶19 Next, Sparling challenges the court's finding that there was evidence demonstrating that he "was a current or recent user of methamphetamine within the time related to the incident." But the State presented evidence that Sparling had not merely used drugs recently, but that he had participated in the consumption of *the very drugs in question* after Friend purchased them in Salt Lake City. As noted above, this is a factor that may be considered in the constructive possession calculus. *See Anderton*, 668 P.2d at 1264. In particular, Friend told Officer 1—as captured on Officer 1's bodycam video—that she and Sparling had "smoked a bowl" of "the meth" and "the pot" in Salt Lake City. One reasonable interpretation of this statement is that Sparling consumed part of the very drugs that are at issue in this case. While other readings of this statement are perhaps possible, we defer to a factfinder's interpretation of evidence. *See State v. Briggs*, 2008 UT 75, ¶ 11, 197 P.3d 628 (explaining that judges, when sitting as factfinders, are afforded a certain amount of leeway in drawing inferences from the evidence presented, and "we will not take issue with those

inferences unless the logic upon which their extrapolation from the evidence is based is so flawed as to render the inference clearly erroneous" (quotation simplified)); *see also Lohman v. Headley*, 2012 UT App 337, ¶ 9, 293 P.3d 380 ("When the evidence is susceptible to more than one interpretation, the district court, as the fact finder, is to consider the evidence and has significant discretion to assign relative weight to the evidence before it."). Sparling has thus not convinced us that the district court erred in taking into account Friend's statement that, on the day before his arrest, Sparling had used some of the very drugs in question.

¶20 Sparling also resists any effort to hold the text messages against him, asserting that the district court itself found this evidence "to not be helpful other than to show that [Friend] was going to share the methamphetamine." Sparling's characterization of the court's findings regarding the persuasiveness of this evidence misconstrues the record; while the court did state that it found the messages only "slightly helpful," it went on to state that the messages also indicated that Sparling had at least some role, along with Friend, in attempting to sell the methamphetamine. The constructive possession inquiry is one that requires consideration of the totality of the circumstances, *see State v. Fox*, 709 P.2d 316, 319–20 (Utah 1985), and we perceive no error in the district court's consideration of those messages. Indeed, as we read the record, those messages are highly probative of Sparling's involvement in the efforts made to market and sell the drugs to users in Blanding.

¶21 Finally, Sparling argues that the district court's determination to acquit him on the other two drug charges—for the heroin found in Friend's purse and the THC vape pen found in the glove box—demonstrates that he did not have "dominion or control" of the methamphetamine. Some of the factors relevant to this argument concern the "ownership and/or occupancy" of the vehicle where the contraband was found, "the defendant's proximity to the contraband," and the "presence of contraband in

a specific area where the defendant had control." *See Ashcraft*, 2015 UT 5, ¶ 19 (quotation simplified). According to Sparling, because these factors were equally present for all three of his drug-related charges—especially the heroin, which was found in Friend's purse alongside the methamphetamine—it was erroneous for the court to acquit him on only two counts and convict him on the third. We are unpersuaded.

¶22 As an initial matter, this appeal does not concern the propriety of the court's decision to acquit Sparling on the other two drug charges. The only question relevant here is whether the State presented evidence sufficient to support a conviction on the methamphetamine charge. And we have already determined that it did.

¶23 Moreover, there are several potential material differences between the circumstances surrounding the methamphetamine and the circumstances surrounding the other drugs. Specifically, Friend admitted that one of the primary purposes of the trip was to buy drugs, that the methamphetamine was purchased in Salt Lake City, and that she and Sparling had consumed some of the methamphetamine before heading back to Blanding. She further admitted that Sparling's broken license was used to "chop up" the "chunk of methamphetamine," and the district court noted the significance of the license's presence in Friend's purse as it was something owned by Sparling that could be connected "directly to the methamphetamine." By contrast, the district court noted there was "no testimony" that Sparling was "a recent heroin user" or that he "intended to control" that drug "other than its presence" in Friend's purse. In addition, even though Friend had indicated that Sparling had smoked marijuana the previous night, the court noted that the phrasing Friend had used was that they "smoked a bowl" and "a bowl is not a vape pen." Accordingly, the court determined there was "no indication" that "Sparling knew the vape pen was even there." Thus, the district court made an attempt to differentiate between the various drug charges and

to explain why it was acquitting Sparling on two of them but convicting him on the methamphetamine charge. The court's reasoning is supported by evidence in the record.

¶24   In sum, then, none of Sparling's counterarguments are persuasive. The State presented sufficient evidence—considered in its totality—to support a conviction on the methamphetamine charge. While we agree with Sparling that any of the facts relied on by the district court, if considered in isolation, would likely be insufficient to support a determination that he constructively possessed the methamphetamine, the sum of the evidence was sufficient. In constructive possession cases, courts are to take a comprehensive approach, consider all the relevant factors, and then assess whether "the totality of the evidence taken as a whole" supports the conviction. *Ashcraft*, 2015 UT 5, ¶ 27. Under the totality of the circumstances presented here, the court's conclusion that there was a sufficient nexus connecting Sparling to the methamphetamine was supported by the evidence.

CONCLUSION

¶25   The State presented sufficient evidence to support the district court's constructive possession finding. We therefore reject Sparling's appellate argument and affirm his conviction.

———————